Edward S. Stokes, Plaintiff in Error, *v*. The People of the State of New York, Defendants in Error.

It is within the power of the legislature to make such changes in the law respecting the mode of procuring and impanneling a jury as it may deem expedient, limited only by the constitutional obligation to preserve the right of trial by an impartial jury.

The act "in relation to challenges of jurors in criminal cases" (chap. 475, Laws of 1872), which provides in substance that an opinion or impression as to the circumstances or as to the guilt or innocence of the prisoner shall not be a sufficient ground of challenge for principal cause, provided the juror declares on oath that he can render an impartial verdict, and provided the court be satisfied that he does not entertain such a present opinion as would influence his verdict, does not infringe upon the right to an impartial jury, and is constitutional.

The rules of evidence in or the details of a criminal trial may be changed as to prior as well as to subsequent offences, and the provisions of the statute above mentioned are applicable upon the trial of an offence charged to have been perpetrated prior to its passage.

Where, upon trial of an indictment for murder, evidence had been given making it a question for the jury whether the act was perpetrated by the prisoner in defending himself against an attempt on the part of the deceased to murder or to inflict some great bodily harm upon him,—*Held*, that evidence of violent threats made by the deceased against the prisoner a short time before the occurrence was proper, although such threats were not communicated to the prisoner.

A material witness for the prisoner was asked, upon cross-examination, whether she had taken things not belonging to her when she left a place where she had been at service. The prosecution was permitted to give evidence showing that her answers were untrue. *Held*, error; that it being a collateral matter the prosecution was bound by the answers.

The minutes of a grand jury, tending to show that an indictment upon the

complaint of the deceased had been ordered against the prisoner, were offered in evidence on the part of the prosecution and received. No proof was given tending to show that the prisoner had knowledge of such action. *Held*, that the evidence was improperly received; that it could have no tendency to show a motive, in the absence of knowledge, and that its only effect was as tending to show the commission of another crime by the accused, which the prosecution had no right to prove.

The court charged the jury, in substance, that the legal implication, from the fact of the killing, in the absence of proof of the circumstances of its perpetration, was that the act was murder, and cast upon the prisoner the burden of showing that it was not. *Held*, error; that under the statute classifying homicide mere proof that one has been deprived of life by the act of another fails utterly to show the class to which the homicide belongs.

The rule that an error committed upon a trial may be overlooked when the party complaining was not prejudiced thereby is only applicable in cases where the error could by no possibility have produced injury.

(Argued May 10, 1873; decided June 10, 1873.)

ERROR to the General Term of the Supreme Court in the first judicial department to review judgment, affirming a judgment of the Court of Oyer and Terminer in and for the county of New York, entered upon a verdict convicting plaintiff in error of the crime of murder in the first degree.

The plaintiff in error was indicted by the grand jury of the Oyer and Terminer, in and for the county of New York, on the 12th day of January, 1872, for the murder of James Fisk, Jr., on the 6th day of January, 1872, at the Grand Central Hotel, in the city of New York.

In February, 1872, the plaintiff in error interposed seven special pleas to the indictment, setting forth :

*First.* That there was a grand jury of the General Sessions in existence at the time of the finding of the bill by the grand jury of the Oyer and Terminer ; that the former was the only legal grand jury in existence.

*Second.* The grand jury of the Oyer and Terminer was not legally impanneled, inasmuch as Judge INGRAHAM, who presided therein at the time they were sworn and returned the indictment, and at the time it was filed, was also one of the judges of the General Term.

*Third.* That by an order of the General Term, made November, 1869, Judge D. P. INGRAHAM was appointed to hold a Court of Oyer and Terminer for December, 1871; that subsequently, in April, 1870, he was appointed by the Governor one of the permanent judges of the General Term.

*Fourth.* Is to the same substantial effect as the third plea.

*Fifth.* That at the time this bill of indictment was found by the Oyer and Terminer, the only regular grand jury in session was that of the General Sessions.

*Sixth.* The coroner was bound to return the indictment to the next court of criminal record, which would have been the February term of either General Sessions or Oyer and Terminer, beginning on the second Monday of February, 1872.

*Seventh.* That the grand jury was illegally and irregularly organized.

To six of these said pleas the district attorney demurred and the court sustained his demurrer, and to the seventh he joined issue. The issue thus joined came on to be tried in May, 1872, at a Court of Oyer and Terminer held in the city of New York. The court, after hearing the evidence, refused to allow the jury to pass upon the facts, but directed them, against the protest and exception of plaintiff in error, to find a verdict for the people. In May, 1872, the plaintiff in error was again brought into the Court of Oyer and Terminer and directed to plead to the indictment. He, through his counsel, interposed an additional special plea, setting forth the facts proven upon the trial of the issue raised by the seventh plea. The court overruled the same and directed the prisoner to plead to the indictment, which he declining to do, the court directed a plea of not guilty to be recorded by the clerk.

In June, 1872, the defendant was placed on trial under the said indictment; the jury disagreed and were discharged by the court. On the 15th day of December, 1872, the defendant was again placed on trial and the jury returned a verdict of guilty of murder in the first degree.

The facts appearing upon the trial, so far as pertinent to the questions discussed, appear sufficiently in the opinions.

*Lymain Tremain, John R. Dos Passos* and *Cephas Brainerd* for the plaintiff in error. It was error for the court to charge the jury that the fact of the killing being conceded, the burden of proof that it was not murder was upon the prisoner. (*People* v. *Wilson,* 4 Park. Cr., 619; *People* v. *McCann,* 16 N. Y., 66; *Hone* v. *Hawkins,* 3 Gray, 463; *People* v. *Robinson,* 2 Park. Cr., 235; Trial Prof. Webster, 72 N. A. Rev., 178; *Comm.* v. *York,* Hurd's Ldg. Cas.; Cooley Const. Lim., 9 Metc., 109; 2d ed., 325, note; 1 Hale P. C., 425; 4 Blk. Com., 198; 3 Coke's Ins., 47; 1 Hawk C., 31, § 3; Foster, 256; 1 East P. C., 215; 1 Browne Appx., 22; *Penn* v. *McFall,* Addis., 257; *Penn* v. *Lewis,* 1 id., 282, 283; 4 Black., 21, Sharswood's note, 26; *Comm.* v. *O'Hara,* cited in Whart. Dig., 148; 1 Russ. on Crime, 482, note; *Com.* v. *Gross,* 1 Ash., 281; *Com.* v. *Crane,* 1 Virg. Case, 10; *Respublica* v. *Bob.,* 4 Dal., 145; *State* v. *Turner,* Wright, 20; *Coffee* v. *State,* 3 Yerg., 283; *Dale* v. *State,* 10 id., 551; *Dains* v. *State,* 3 Hump., 439; *Bratton* v. *State,* 10 id., 103; *Darry* v. *People,* 2 Park., 606; 10 N. Y., 136; *Fitzgerald* v. *People,* 37 id., 413; 1 Russ. on Crime, 571; *People* v. *Sullivan,* 1 Park., 347; *People* v. *Clark,* 3 Seld., 385; *People* v. *Sullivan,* id., 396; *People* v. *Austin,* 1 Park., 154; *People* v. *Johnson,* id., 291; *Dury* v. *People,* 10 N. Y., 136; *Maher* v. *People,* 6 Mich., 217, 218; *People* v. *Perry,* 8 Abb. [N. S.], 34; 1 Colby Crim. L., 593; *Whitford* v. *Comm.,* 6 Rand., 725; *Hill's Case,* 2 Gratt., 594; *Kelly* v. *Comm.,* 1 Grant's Case, 492; Stark on Ev., 377; 3 Greenl. on Ev., § 29; *People* v. *Divine,* 1 Edmunds' Select Cas., 594; *Wynhamer* v. *People,* 15 N. Y.; *People* v. *Enoch,* 14 Wend., 159, 421, 424; *Comm.* v. *Webster,* 5 Cush., 305; 3 Monthly L. Mag. [N. S.], 1, 13; 2 West. L. J., 487; U. S. Monthly Mag., 497; *U. S.* v. *Mungs,* 7 [Boston] Monthly L. R. [U. S.], 435, 439; *Comm.* v. *Gardner,* 11 Gray, 438; 4 Penn. L. J., 156, 157; What. on Hom., 460, 461; Whart. Cr. L., § 1084; *Fonts* v. *State,* 8 Ohio St.

[N. S.], 98; Whart. Am. Cr. L., 6th ed., § 925, note; *Dale* v. *State*, 10 Yerg., 351; *Anthony* v. *State*, 1 Meigs, 265; *People* v. *Wiley*, 3 Hill, 195–212, *et seq.*) This error affords abundant ground for a new trial. (*Wilson* v. *Rastatt*, 4 T. R., 753; 3 G. & W. on N. T., 774, 800, and cases cited, 775, 768; *Benham* v. *Cary*, 11 Wend., 83; *Hastings* v. *Bangor*, H. P., 18 Me., 436; *Troxdale* v. *State*, 9 Hump., 411; *James* v. *Langdon*, 7 B. Mon., 193; *Chrisman* v. *Gregory*, 4 id., 474; 4 Conn., 356; *Lamb* v. *C. and A. R. R. and T. Co.*, 46 N. Y., 279.) It was error to admit the minutes of the grand jury in evidence, that the day before the homicide they had indicted the prisoner for the crime of blackmailing deceased. (*Myers* v. *Malcolm*, 6 Hill, 296, and note; *Cunliff* v. *Mayor*, 2 Barb., 104; Whart. Am. Cr. L., § 824; 1 Greenl., § 461; *Real* v. *People*, 42 N. Y., 281; *Warrell* v. *Parmelee*, 1 N. Y., 519; *Baird* v. *Gillett*, 47 id., 186; *Wilson* v. *Wilson*, 4 Keyes, 413; 12 Wend., 41; 7 id., 193; 21 Barb., 189.) It was error to exclude evidence of threats made by deceased that he would kill the prisoner. (*Keener* v. *State*, 18 Ga., 194; *Pritchette* v. *State*, 22 Ala., 39; *Monroe* v. *State*, 5 Ga., 85; *Campbell* v. *People*, 16 Ill., 17; *Cor.* v. *Com.*, 15 B. Mon., 539; *Jewitt* v. *Banning*, 21 N. Y., 27; 1 Greenl. Ev., 102; 1 Phil. Ev., 181; *Williams* v. *People*, 54 Ill.) The court erred in excluding evidence of the prisoner that he had been under apprehension of violence from deceased. (*People* v. *Rector*, 19 Wend., 591; 1 Arch. Waterman's Notes, 794; *Seeberth Case*, 2 Whart, § 1027, note *x*, p. 806; Cro. Car., 538; *Loque* v. *Com.*, 2 Wright, 268; *Hawkeswaith's Case*, 1 Hale, 240.) The court erred in admitting secondary evidence. (*Newcomb* v. *Griswold*, 24 N. Y., 298; *Wright* v. *Maseras*, 56 Barb., 521.) When a witness testifies to a fact and evidence is introduced to impeach his credibility, he may be corroborated by evidence of what he testified or stated on former occasions. (*Henderson* v. *Jones*, 10 Serg. & Rawle, 322; *Cooke* v. *Curtis*, 6 Har. & J., 86; *Coffin* v. *Anderson*, 4 Blackf., 395; *Beauchamp* v. *State*, 6 id., 300; *State* v. *Georgia*, 8 Ire., 324; *Dorsett* v. *Miller*, 3

Sneed., 73.)   The prosecution was bound by the evidence of Jennie Turner on her cross-examination, and could not contradict her.   (1 Greenl., § 449, and cases cited; 5 Wend., 301–305; *Lawrence* v. *Baker*, 16 Pick., 157; *Com.* v. *Buzzell*, 4 Den., 502.)   The act of May 3, 1872, regulating the qualifications of jurors is unconstitutional.   (Constitution of N. Y., art. 1, § 6; Constitution of U. S., subd. 3, § 2, art. III; Amendments to Constitution of U. S., art. VI; *Burr's Case*, 1 Burr's Trial, 387, 415; 4 Hargraves' St. Trials, 748; Hawk. P. C. Ch., 43, B. 2, § 28; Bac. Abridg., Juries, E., 5; Coke Litt., 155, etc.; 4 Blk. Com., 353, N. 12, by Christian; 26 Howell's St. T., 1223; *U. S.* v. *Woods*, 4 Cranch, 484; 2 Reeves' Hist. Eng. L., 446; 5 Bac. Ab., Jurors, 303; *Work* v. *St. of Ohio*, 2 Ben. & H. Ldg. Cr. Cas., 333; *People* v. *Vermilyea*, 7 Cow., 108; 6 id., 557; *People* v. *Mather*, 4 Wend., 22; *People* v. *Freeman*, 4 Den., 34; *Mann* v. *Glover*, 2 Green, 195; *State* v. *Benton*, 2 Drs. & B., 196; *Irvine* v. *Kean*, 14 S. & R., 292; *Com.* v. *Lester*, 11 id., 155; *People* v. *Cancemi*, 16 N. Y., 501; *People* v. *Allen*, 43 N. Y., 33; *People* v. *Kennedy*, 2 Park., 317; *Baxter* v. *Putney*, 37 How., 143; *Townsend* v. *Hendricks*, 40 id., 162; *Lloyd* v. *Mourse*, 2 Rawle, 49; *Wiggin* v. *Plumer*, 31 N. H., 272; *Blake* v. *Milspaugh*, 1 J. R., 316; *Dunk* v. *Mosher*, 8 id., 445; *Pringle* v. *Huse*, 1 Cow., 432; *People* v. *Goodwin*, 18 J. R., 200; Cooley's Const. Lim., 2d ed., 309, 311; *R.* v. *Gordon*, 1 Leach C. L., 515; *People* v. *Bodine*, 1 Den., 304; 3 Blk. Com., 363; 1 Just., 156 *b*, 157 *a;* 1 Trials *per pais*, 178; 1 Bish. Crim. R., 772.)   The prisoner was entitled to trial under the jury law that existed when the alleged crime was committed. (1 Shars. Blk., 91, note 37; Potter's Dwar. on Stat., 162, and cases cited; Cooley's Const. Lim., 63; *Sayer* v. *Wisner*, 8 Wend., 661; *Fust* v. *Cabenas*, 18 Abb., 144; *Griswold* v. *At. Dock Co.*, 21 Barb., 225; *Ely* v. *Holden*, 15 N. Y., 595; *People* v. *Camel*, 6 id., 463.)

*Benjamin K. Phelps*, district attorney, and *William Fullerton* for the defendants in error.   There being nothing dis-

closed upon the trial that would justify a verdict for the prisoner, it was proper to direct a verdict for the people. (*Herring* v. *Hoppock*, 15 N. Y., 413; *People* v. *Cook*, 8 id., 67; *Labar* v. *Kopplen*, 4 Comst., 547; *People* v. *Bennett*, 49 N. Y., 137.) The jury law of 1872 is constitutional. (*Taylor* v. *Porter*, 4 Hill, 140; *Wynehamer* v. *People*, 13 N. Y., 446; *Walters* v. *People*, 32 id., 147, 159; 3 Coke's Litt., 464; Cro. Eliz., 260; *Durell* v. *Mosher*, 8 J. R., 347; *Freeman* v. *People*, 4 Den., 9, 34; *Lohman* v. *People*, 1 Com., 384; *People* v. *Bodine*, 3 Den., 122; *Comm.* v. *Webster*, 5 Cush., 295.) There was no error in the admission of evidence as to what occurred after the shooting in the presence of deceased and the prisoner. (*State* v. *Nash*, 10 Iowa, 81; *Comm.* v. *McPipe*, 3 Cush., 181; *Harle* v. *State*, Swans., 253; 1 Arch. Cr. L. and Pldgs., 7 Am. ed., 408, note; *Jewett* v. *Banning*, 21 N. Y., 27; *People* v. *McKee*, 36 id., 113; *People* v. *Green*, 1 Park., 17.) Proof of threats by deceased that he would kill the prisoner, not claimed to have been communicated to the latter until after the homicide, was properly excluded. (*People* v. *Lamb*, 7 Keyes, 360; *Powell* v. *State*, 19 Ala., 577; *State* v. *Gregor*, 21 La. An. R., 473; Wharton's Am. Cr. L., § 1027.) The prisoner not having been prejudiced by the error of the judge on the trial, the conviction will not be reversed. (*People* v. *Bransby*, 32 N. Y., 525; *People* v. *Gonzales*, 35 id., 49; *People* v. *Kennedy*, 39 id., 245; *Shorter* v. *People*, 2 id., 193; *People* v. *McCann*, 16 id.; *Markley* v. *Schultz*, 29 id., 356.)

GROVER, J. Having carefully examined the six pleas in abatement, interposed by the plaintiff in error to the indictment, to which the district attorney demurred, upon which judgment was given sustaining the demurrers, and arrived at the conclusion that there was nothing contained in any of these pleas entitling him to judgment quashing the indictment or to any other relief, we shall not examine whether these proceedings are before this court properly for review upon the certiorari issued and the return made thereto. The same

remark is applicable to the seventh plea, upon which an issue of fact was joined by the replication of the district attorney, which was tried before Mr. Justice Cardozo, upon which he directed a verdict for the people. The testimony disclosed nothing tending to show the invalidity of the indictment, and the plaintiff in error was not injured by the disposition of the matter by the judge.

Whether the questions thus attempted to be raised are reviewable by this court, and, if so, what practice should be adopted in bringing them before the court, are immaterial in the present case.

The plaintiff in error clearly had no right to interpose these pleas a second time, or others of a similar character, and was properly required by the court to plead to the indictment, and, upon his standing mute, the proper course was taken by the court in ordering the plea of not guilty to be entered for him, and proceeding to the trial of the issue thus joined.

The only questions necessary to examine are those of law, arising upon the exceptions taken by the counsel for the accused upon the trial of this issue, and, perhaps, those upon the errors in fact assigned upon the writ of error upon the judgment. Those arising upon the exceptions taken upon the trial will first be considered.

Exceptions were taken to the decisions of the court upon the challenge by the prisoner of several jurors for princi- pal cause. It was not claimed by the counsel of the accused that any error was committed, if chapter 475, volume 1, page 1,133 of Laws of 1872 is constitutional. It will be proper first to determine this question, as in case that act be held constitutional and valid, it will be unnecessary to determine whether any error was committed, had the law remained as it was at the time of the passage of the act. The position of the counsel for the accused is, that the right of trial by jury is secured to persons accused of felony by the Constitution, and that this secures the further right of trial by an impartial jury. We shall assume the correctness of the latter position. Any act of the legislature

providing for the trial otherwise than by a common-law jury, composed of twelve men, would be unconstitutional and void, and any act requiring or authorizing such trial by a jury partial and biased against either party, would be a violation of one of the essential elements of the jury referred to in and secured by the Constitution. The counsel insists that the act in question does compel the accused to be tried by a jury partial and biased against him. That the common law held, that having formed or expressed an opinion, conclusively proved a want of impartiality, and for this reason excluded the juror upon a challenge for the principal cause, without inquiry as to whether this would influence his action as a juror. The authorities upon the question were somewhat conflicting, and the object of the statute was to prescribe a definite rule. The act provides that the previous formation or expression of an opinion or impression in reference to the circumstances upon which any criminal action at law is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, shall not be a sufficient ground of challenge for principal cause to any person who is otherwise legally qualified to serve as a juror upon the trial of such action, provided the person proposed as a juror who may have formed or expressed, or has such an opinion or impression as aforesaid, shall declare on oath that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial, and that such previously formed opinion or impression will not bias or influence his verdict, and provided the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror. It will be seen that the intention of the act was not to place partial jurors upon the panel, but that great care was taken to prevent such a result. The end sought by the common law was to secure a panel that would impartially hear the evidence and render a verdict thereon uninfluenced by any extraneous considerations whatever. If the person proposed as a juror can and will do this, the entire purpose is accomplished. To secure

this the statute requires that he shall make oath that he can do this, irrespective of any previous or existing opinion or impression. Not satisfied that this may be safely relied upon, on account of the difficulty of determining by a person having an opinion or impression how far he may be unconsciously influenced thereby, the statute goes further and provides that the court shall be satisfied that the person proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror. Surely this latter provision, if rightly and intelligently administered by a competent court, will afford protection to the accused from injury from a partial jury. But the accused has not only this but the further protection in his right, after challenge for principal cause has been overruled, again to challenge for favor, and have this tried and determined, uninfluenced by the decision made by the former challenge. While the Constitution secures the right of trial by an impartial jury, the mode of procuring and impanneling such jury is regulated by law, either common or statutory, principally the latter, and it is within the power of the legislature to make, from time to time, such changes in the law as it may deem expedient, taking care to preserve the right of trial by an impartial jury. The opinion of Chief Justice NICHOLSON, in *Eason* v. *The State of Tennessee,* is cited in opposition to this view. This opinion was given upon the constitutionality of a statute of Tennessee upon the same subject, but differing from that in this State. By the Tennessee statute it is provided that the juror shall be competent, if he state on oath, that, upon the law and testimony on trial, he believes he can give the accused a fair and impartial verdict. The statement is made conclusive of the question.

The counsel for the accused further insists that the offence charged having been perpetrated, if at all, prior to the passage of the act, it is not to be applied in the trial of this case, if held constitutional, but only to cases arising thereafter. This position cannot be sustained. While no *ex post facto* law is valid, this has no application to the rules of evidence or the

details of the trial. These may be changed as to prior equally with subsequent offences.

The counsel for the accused offered to prove that the deceased, a short time before the occurrence, had made violent threats against him, such as that he "would beggar him first and then kill him;" "I go prepared for him all the time; so sure as my name is Jim Fisk I will kill him;" "I would kill him as soon as I would a ferocious dog." This was objected to by the prosecution and rejected by the court, to which the counsel for the accused excepted. In determining the competency of this testimony it must be borne in mind that evidence had been given making it a question for the jury whether the case was one of excusable homicide upon the ground that the act was perpetrated by the accused in defending himself against an attempt by the deceased to murder or inflict some great bodily injury upon him, and the further question whether it was not perpetrated in resisting an attack made upon him by the deceased from which he had reasonable ground to apprehend a design to murder or inflict upon him some great bodily injury. Evidence of threats made by the deceased, which had been communicated to the accused, was received by the court. Proof of the latter facts was competent, as tending to create a belief in the mind of the accused that his life was in danger, or that he had reason to apprehend some great bodily harm from the acts and motions of the deceased, when, in the absence of such threats, such acts and motions would cause no such belief. But why admissible upon this ground? For the reason that threats made would show an attempt to execute them probable when an opportunity occurred, and the more ready belief of the accused would be justified to the precise extent of this probability. But an attempt to execute threats is equally probable, when not communicated to the party threatened as when they are so; and when, as in this case, the question is whether the attempt was in fact made, we can see no reason for excluding them in the former that would not be equally cogent for the exclusion of the latter, the latter

being admissible only for the reason that the person threatened would the more readily believe himself endangered by the probability of an attempt to execute such threats. Threats to commit the crime for which a person is upon trial are constantly received as evidence against him, as circumstances proper to be considered in determining the question whether he has, in fact, committed the crime, for the reason that the threats indicate an intention to do it, and the existence of this intention creates a probability that he has in fact committed it. Had the deceased, just previous to his going into the hotel where the transaction occurred, declared that he was going there to kill the accused, and that he was prepared to execute this purpose, we think the evidence would have been competent upon the question whether he had in fact made the attempt when that question was litigated. And yet there is in principle no difference between this and the testimony offered and rejected. The difference is only in degree. We are not aware of any decision of the precise question by the courts of this State, but there have been several in accordance with the above views in other States. (*Keever* v. *The State*, 18 Ga., 194; *Pritchette* v. *State*, 22 Ala., 39; *Campbell* v. *People*, 16 Ill., 17; *Cornelius* v. *Commonwealth*, 15 B. Mon., 539.) In *Jewett* v. *Banning* (21 N. Y., 27) it was held that in an action for an assault and battery, alleged to have been committed by the defendant upon the plaintiff when no witnesses were present, proof of previous ill-will by the defendant against the plaintiff was competent as a circumstance tending to show the commission of the acts charged by the plaintiff. This accords with the view above taken. I think the testimony offered was competent and the exception to its exclusion well taken. The error was one prejudicial to the accused, by depriving him of the right to have competent testimony in his favor considered by the jury, and cannot be overlooked by the court.

Jennie Turner was introduced as a witness by, and gave material testimony for the accused. With a view to impair the credibility of her testimony, she was asked by the prosecu-

tion, upon cross-examination, whether she had not left Mrs. Morse, by whom she had been employed, without her knowledge or consent, and whether she did not take things not belonging to her when she left. The prosecution was permitted to prove by Mrs. Morse that her testimony in answer to these questions was untrue, to which the counsel of the accused excepted. This was error. Upon cross-examination the prosecution had the right, for the purpose of impairing the credit of the witnesses, to ask questions as to those collateral matters, but having asked and obtained answers, must abide by the answers given; other witnesses could not be called to prove such answers untrue. (*Lawrence* v. *Barker*, 5 Wend., 301; *Howard* v. *City Fire Ins. Co.*, 4 Den., 502.) It cannot be said that the accused sustained no injury from this. The direct tendency of the incompetent testimony was to impair the credit given to the testimony of his witness.

We think the minutes of the grand jury, showing that an indictment had been ordered by that body against the accused upon the complaint of Fisk for blackmailing, were improperly received. There was no proof tending to show that the prisoner had any knowledge of any such action by the grand jury. The evidence had, therefore, no tendency to show a motive of the prisoner for the killing of the deceased. The prisoner had testified that he knew Fisk had been trying to get him indicted for, as he understood, a conspiracy with another to blackmail him, but that, as he understood, he had failed to procure one. The prosecution could not give evidence tending to show that the prisoner had been guilty of any other crime than the one for which he was upon trial. The only effect of the minutes that I can see was to satisfy the jury that there was evidence of his having committed some other crime of such cogency as to induce the grand jury to indict him therefor. The prosecution had no right to give such evidence. Had the prisoner known of the action of the grand jury, it would have been competent to show a motive for killing the deceased, and, being proper for any purpose, there would have been no error in receiving it.

Numerous other exceptions were taken by the counsel for the prisoner upon the trial to the rulings of the court upon the admissibility of evidence. We have examined these, and arrive at the conclusion that none of them require discussion.

Near the conclusion the judge charged the jury as follows: "The fact of the killing in this case being substantially conceded, it becomes the duty of the prisoner here to satisfy you that it was not murder, which the law would imply from the fact of killing under the circumstances, in the absence of explanation that it was manslaughter in the third degree or justifiable homicide; because, as I have said, the fact of killing being conceded, and the law implying motive from the circumstances of the case, the prosecutor's case is fully and entirely made out, and therefore you can have no reasonable doubt as to that, unless the prisoner shall give evidence sufficient to satisfy you that it was justifiable under the circumstances of the case." To this portion of the charge the counsel for the prisoner excepted. We have examined this portion of the charge to determine whether the idea intended to be conveyed to the jury, and which they would derive therefrom, was that the law implied that the act of killing was murder when perpetrated under the circumstances of the present case, or whether such was the legal implication from the proof of killing, in the absence of proof of the circumstances of its perpetration, by which the case of the prosecution was fully and entirely made out, unless the prisoner had satisfied them that it was not murder which the law would imply from the fact of the killing. We think a careful examination of the entire portion of the charge excepted to will show that the latter was the idea intended to be conveyed, and that the jury must have so understood it. From the opinions delivered it was so understood by the justices of the Supreme Court at General Term. This view is confirmed by the fact that the circumstances attending the killing in the present case were controverted questions, to be determined by the jury from evidence more or less conflicting; as claimed by the prosecution, such as would fully

authorize a finding by the jury of all the facts constituting the crime of murder in the first degree; as claimed by the prisoner, such as would authorize the jury to find the homicide excusable. It can hardly be supposed that, under such proof as to what the circumstances really were, the judge intended to charge the jury that the law implied the crime of murder from proof of killing under the circumstances of the case, and upon such proof such an instruction would have been erroneous. The instruction in effect was, and the jury must so have understood it, that the law implied motive, and consequently the crime of murder in the first degree, from the proof of killing the deceased by the prisoner, and that upon this proof they should find him guilty of that crime, unless he had given evidence satisfying them that it was manslaughter or excusable homicide. This is further confirmed by what immediately follows the portion of the charge excepted to. The judge proceeds to instruct the jury as follows : " Ordinarily, naturally and properly, in cases of this kind, juries are disposed to and should give the prisoner the benefit of any reasonable doubt that may exist in the case, and I do not know that even this is an exception to that rule. If the evidence shall be doubtful upon that subject, if you shall entertain reasonable doubts, if the evidence is evenly balanced, so you do not know where the truth lies, the prisoner would be entitled to the benefit of that doubt." But for the idea conveyed by the part of the charge excepted to, that the law implied the crime of murder in the first degree from the proof of killing only, unless the prisoner satisfied them it was not murder, the benefit of the doubt to be given to the prisoner would not have been restricted to their finding the evidence evenly balanced, so that they did not know where the truth lay; on the contrary, the instruction would have been not to convict of that crime unless convinced by all the evidence in the case that he was guilty, and that if a careful examination of all the evidence left in their minds reasonable doubts of his guilt, they should give the prisoner the benefit by an acquital. This instruction was warranted

by the common law of England. (1 H. P. C., 445; 1 East P. C., 34; 3 M. & S., 15; *Regina* v. *Chapman*, 2 Eng. R.; 12 Cox Crim. Cases, 4; *Commonwealth* v. *York*, 9 Metcalf, 93.) As thus construed, the portion of the charge excepted to is obviously in contravention of principle and the analogies of the law. It is a maxim in the law that innocence is presumed until the contrary is proved. How is guilt established by proof only of one of the ingredients essential to constitute crime? To constitute crime there must not only be the act, but also the criminal intention, and these must concur, the latter being equally essential with the former. *Actus non reum facit, sed mens* is a maxim of the common law. The intention may be inferred from the act, but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law to be applied by the court. But the question in this case is not what was the rule of the common law as to the implication of malice from the act, whether such rule is deduced from authority or principle and legal analogies. The question arises upon the statute of the State by which homicide is made justifiable or excusable, murder in the first or second degree, or manslaughter in one of four degrees, determinable by the intention and circumstances of its perpetration. Under the statute, it is obvious that mere proof that one has been deprived of life by the act of another, utterly fails to show the class of the homicide under the statute.

Section 3 of title 2 of the statute declares in what cases the homicide, when perpetrated by an individual, shall be justifiable. Section 2 of title 1, as amended by the act of 1862, provides that such killing, unless it be manslaughter, excusable or justifiable homicide, shall be murder in the first degree in the following cases: *First.* When perpetrated from a premeditated design to effect the death of the person killed or of any human being. It was under this provision that the prosecution sought to convict the prisoner. To justify such conviction it was necessary for the prosecution to prove all the facts bringing the case of the prisoner within it.

Mere proof of the killing did not, as a legal implication, show this. It might still be murder in the second degree, manslaughter in some degree, or justifiable or excusable homicide, consistent with such proof.

It was error to instruct the jury that the law implied all these facts from the proof of the killing. The correctness of this has rarely been questioned since the enactment of the statute. Hence there has been but little said by the courts upon the question, but what has been said sustains it. (*People* v. *Clark*, 7 N. Y., 393; *Fitzgerrold* v. *People*, 37 id., 418; *People* v. *White*, 24 Wend., 520; *Wilson* v. *People*, 4 Parker, 619.) The General Term was correct in the conclusion that this part of the charge was erroneous, and in the further conclusion that to obviate the error it was for the people to show that the prisoner was not prejudiced by such error. (*Greene* v. *White*, 37 N. Y., 405; *Clarke* v. *Dutcher*, 9 Cow., 674; *People* v. *Wiley*, 3 Hill, 194.) We have examined the entire charge to determine whether it does so show. We find that the judge correctly charged the jury as to the facts necessary to constitute the crime of murder in the first degree, and further, that he correctly instructed them that the people must prove all these facts to authorize the jury to render a verdict convicting him of that crime. But how does this cure the error of the instruction that the law implied all the necessary additional facts from the proof of the killing? It was in effect instructing the jury that although the people must prove all these facts, yet they had done so by proving the killing, and by that the case of the prosecution was fully and entirely made out, and that this proof made it the duty of the prisoner to satisfy them that it was not murder which the law would imply from that proof, thus in effect instructing the jury that the proof of the killing cast the burden of proof upon the prisoner to show that it was not murder but manslaughter, or justifiable homicide. No such burden of proof was, by that, cast upon the prisoner. (*Lamb* v. *C. and A. R. R. and Tr. Co.*, 46 N. Y., 271.) The further instruction to the jury, to the effect that the

law required no particular length of time between forming the design to kill and the act by which the death was effected, had no relation to or bearing upon the point in question; the jury may, as matter of fact, find the design to kill from the act by which death was effected; and all facts, except that of the killing itself, required to constitute murder in the first degree, by proof of circumstances which convince them of the truth of such facts. They are to pass upon the whole case, inferring facts from the proof of other facts which convince their judgment of the truth of the facts inferred, bearing in mind that the burden of proof is upon the prosecution as to all the facts necessary to constitute guilt during the entire trial, and that their verdict should be the conscientious expression of their convictions derived from all the evidence.

It is unnecessary to pass upon any of the questions arising upon the offer of the plaintiff in error to assign error in fact upon the judgment. As to these we will simply remark that we think they were properly disposed of upon the motion for a new trial.

But for errors in rejecting competent evidence offered by the prisoner and in receiving incompetent evidence against him, and in the part of the charge excepted to, the judgment must be reversed and a new trial ordered.

RAPALLO, J. I am satisfied that the conviction in this case cannot be sustained without the violation of settled principles of law, and it necessarily follows that I must vote for a reversal. While concurring in the reasons assigned by my learned associate for coming to the same conclusion, I will briefly state the considerations which to me seem controlling, independently of the numerous other points which have been discussed.

It is a cardinal rule in criminal prosecutions that the burden of proof rests upon the prosecutor; and that if upon the whole evidence, including that of the defence as well as of the prosecution, the jury entertain a reasonable doubt of the guilt of the accused, he is entitled to the benefit

of that doubt. The jury must be satisfied on the whole evidence of the guilt of the accused; and it is clear error to charge them, when the prosecution has made out a *prima facie* case and evidence has been introduced tending to show a defence, that they must convict, unless they are satisfied of the truth of the defence. Such a charge throws the burden of proof upon the prisoner and subjects him to a conviction, though the evidence on his part may have created a reasonable doubt in the minds of the jury as to his guilt. Instead of leaving it to them to determine upon the whole evidence whether his guilt is established beyond a reasonable doubt, it constrains them to convict, unless they are fully satisfied that he has proved his innocence.

The charge in this case was in my judgment calculated to convey to the jury that erroneous rule for their guidance. They were virtually instructed that, the killing being conceded, they should convict of the crime of murder, unless the proofs adduced by the prisoner satisfied them that the circumstances under which the killing took place were such as to justify his act, or reduce the grade of his offence. Though upon the whole evidence they might be in doubt as to what the circumstances really were, the killing being conceded, this charge indicated that it was their duty to convict.

The language of the charge to which exception was taken is as follows: " The fact of killing in this case being substantially conceded, it becomes the duty of the prisoner here *to satisfy you* that it was *not murder*, which the law would imply from the fact of the killing under the circumstances, in the absence of explanation that it was manslaughter in the third degree or justifiable homicide; because, as I have said, the fact of killing being conceded, and the law implying malice from the circumstances of the case, the prosecution's case is fully and entirely made out; *and therefore you can have no reasonable doubt as to that,* unless the prisoner shall give evidence *sufficient to satisfy you* that it was *justifiable* under the circumstances of the case."

Argument seems unnecessary to demonstrate the error of

this charge.    It was a necessary part of the case of the pro-
secution to establish that the homicide was perpetrated with a
premeditated design to effect the death of the person killed ;
yet the court, assuming to determine what the circumstances
of the killing were, solemnly instructed the jury that the fact
of killing being conceded, the law implied malice from the
circumstances of the case, and that the case on the part of the
prosecution was fully made out, and that the jury *could have
no reasonable doubt as to that* unless the evidence on the part
of the prisoner *satisfied them* that the killing was justifiable.
The Supreme Court, in sustaining the judgment of the
Court of Oyer and Terminer, do not attempt to defend
the legality of this charge.    On the contrary, the very able
opinion of FANCHER, J., conclusively demonstrates upon
authority that it is at variance with numerous adjudications
and the settled law upon the subject.    But it is claimed that
the error may be overlooked on the ground that the prisoner
was not prejudiced thereby, and cases are cited which decide
that where it appears to the appellate court that error has been
committed, yet that the error could not possibly have preju-
diced the party complaining, it will not be made a ground of
reversal either in civil or criminal cases.

In all these cases it will be found that the court has been
exceedingly careful so to limit this rule as to render it appli-
cable only where by no possibility could the error have pro-
duced injury, and even this was an innovation upon ancient
rules, under which it was a matter of course to reverse when
error appeared, without inquiring into its materiality.

That so vital an error as one which should or might mislead
the jury on the question as to the party on whom the burden
of proof rested, could come within the category of those which
could not possibly prejudice the determination of the case, is
utterly inadmissible.    Nothing short of an unequivocal retrac-
tion of that portion of the charge could have removed from
the minds of the jury the impression which it was calculated
to produce.    It was the concluding portion of the charge, and
afforded the jury a simple rule for their guidance in their

consultation: The fact of killing was, as they were told, *conceded.* They were further told that it was the duty of the prisoner to satisfy them that this killing was not murder. That the law implying malice from the circumstances of the case, the prosecution's case was fully and entirely made out, and therefore they could have no reasonable doubt as to that, unless the evidence on the part of the prisoner *satisfied them* that it was justifiable under the circumstances. Their inquiry was thus reduced to whether they were *satisfied* of the truth of the allegations on the part of the defence. If they were in doubt whether these were true or not, they were bound to convict.

It seems to have struck the mind of the learned judge at the time, that the rule thus laid down by him encroached somewhat upon the principle that the prisoner was entitled to the benefit of a reasonable doubt, and he immediately followed by stating that, ordinarily, juries should give the prisoner the benefit of any doubt that may exist in the case, and that he did not know that even this was an exception to that rule, and he proceeded to instruct them generally upon the subject of reasonable doubts.

It is impossible that we should know whether these instructions effectually eradicated from the minds of the jury the erroneous impression calculated to be produced by the previous portion of the charge, and we cannot, therefore, pronounce, as a conclusion of law, that it had no influence upon the verdict.

Whether under a proper charge the jury would have come to the same result it is not within our province to decide. The determination of the facts rests wholly with the jury. It is for the court to instruct them as to the law, and these instructions they are bound to follow. If materially erroneous it is the imperative duty of the appellate tribunal to grant a new trial.

All concur.

Church, Ch. J., and Allen, J., expressing no opinion as to the constitutionality of the act, chapter 475, Laws of 1872.

Judgment reversed, and new trial ordered.