PATRICK NICHOLS, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Evidence—when the general character of the deceased, for violence, may be proved on the trial of one charged with his murder.*

Nichols, the plaintiff in error, and one O'Connell, having had an altercation in a beer saloon, the latter struck Nichols and shoved him out of the saloon, and subsequently followed him some two hundred and fifty feet to the corner of a street, and again struck him. Nichols then ran home, calling for his knife, and stating that he would kill or fix O'Connell. Having procured a carving knife, he returned to the corner, where he and O'Connell instantly came together, and the latter was cut through the heart with the knife.

Upon the trial of Nichols, the plaintiff in error, for murder, he testified that upon his return he was attacked by O'Connell, and used the knife in self-defense. He then offered to show specific acts of violence committed by the deceased upon other occasions upon other people, and also to show the character of the deceased to be bad, from general reputation for violence.

*Held*, that the court properly excluded the evidence tending to prove specific acts of violence upon other occasions, but erred in excluding that which tended to show that the general character of the deceased for violence was bad.

WRIT OF ERROR to the Court of Oyer and Terminer, of the county of Rockland, to review the conviction of the plaintiff in error, of murder.

*C. P. Hoffman*, for the plaintiff in error.

*Alonzo Wheeler*, district-attorney, and *C. H. Winfield*, for the defendants in error.

BARNARD, P. J.:

There is no sufficient defect in the record to warrant a reversal of the judgment. In the recital which precedes the indictment, the judges of the Court of Oyer and Terminer state that the indictment was found at a Court of General Sessions held in Rockland County. The recital states that the court was held before the county judge and two justices of sessions, and that, "during the same term of the said Court of Sessions," the indictment was sent

for trial to the Court of Oyer and Terminer. It appears that the Statute Court, with its legal judges, was held when the indictment was found, and it is correctly designated in all the material parts of the return.

The bill of exceptions states that the indictment was found at the Court of Sessions. The use of the word General, in the recital, is merely a mistake, and does no injury. The order transferring the indictment to the Oyer does not appear in the record. It is stated to have been duly made and entered. No objection was made to it previous to, or upon the trial, and the court will not infer upon appeal that the trial was sent to the Oyer otherwise than by a legal order. The remaining questions arise upon exception to the rejection of evidence, offered by the prisoner upon the trial.

The indictment was for murder in the first degree. The prisoner was accused of causing the death of one Thomas O'Connell, by stabbing him with a knife. The evidence tended to show that the prisoner and O'Connell had a trifling difficulty in a beer saloon in Nyack, called the "Alcove."

That O'Connell then struck the prisoner and probably shoved him out of the saloon. The prisoner went out and passed along the street some two hundred and fifty feet to the corner of Bond street. That very soon after, if not immediately, O'Connell came to the same corner, and then again struck the prisoner. The prisoner then ran home calling for his knife, and stating that he would kill or fix the deceased. He got a carving knife and went back to the corner of Bond street, or near it, where the last blow was struck by O'Connell, and the two instantly came together, and O'Connell was cut through the heart with the knife, and died in two or three minutes. The prisoner testified that upon his return with the knife, he was immediately attacked by deceased and that he used the knife in self-defense. The prisoner offered to show specific acts of violence by deceased, upon other occasions to other people.

This was excluded. The prisoner also offered to prove the character of deceased to be bad from general reputation for violence. The evidence was excluded, and exceptions were taken to each ruling. As to the proof of specific acts on other occasions, that

was properly rejected. The point was expressly adjudicated in *Eggler* v. *People* (56 N. Y., 642). The question of the admissibility of the evidence of the general character of the deceased, is one of great doubt. The question has never been directly passed upon by the Court of Appeals. The question first came up before that court in *People* v. *Lamb* (2 Keyes, 371).

The prisoner in that case had been convicted of the murder of his wife. The defense seems to have been that the murder was committed in self-defense. The particular violence alleged against the deceased was that she threw a cover of an iron pot at her husband. The General Term reversed the conviction. Evidence of the general character of accused was in that case rejected, and the General Term probably gave such refusal as a reason for the reversal of the conviction. In the Court of Appeals, Judge DAVIES, in an elaborate opinion, held the rejection of the evidence right, but the judgment of reversal was affirmed by a majority of the court on different grounds.

In *Eggler* v. *People* (56 N. Y., 642), there was also a conviction for murder. In this case, at the trial, proof of the general character for violence of the deceased was received. The prisoner offered to show specific acts of violence in addition, which offer was rejected, and the Court of Appeals held the rejection right. In *Blake* v. *People* (73 N. Y., 586), also a case of murder, the prisoner, by the cross-examination of one of the witnesses for the people, sought to prove that the deceased was a quarrelsome and dangerous man. The court refused to receive the testimony at that time. It was held by the Court of Appeals that the court committed no error in rejecting the evidence in that way; " it being the introduction of a new subject as matter of defense, it was simply a question as to the order of proof, which was in the discretion of the court." While thus, it will be seen, there is no direct decision upon the question, the weight of the authorities seems to call for the admission of the testimony in this case. In *People* v. *Lamb* Judge DAVIES recognizes an exception to the general rule that the character of the deceased is not a question to be raised upon trials for murder. There is no right given to kill any man because of his character. When, however, the

character of the deceased is a material fact to be considered in determining the guilt of the accused, it is to be received like other facts; and if such evidence is rejected improperly, then it furnishes a case where all the evidence was not before the jury, and an improper rejection of evidence is ground for reversal. (*People v. Stokes*, 53 N. Y., 164.) The prisoner has the right to have all competent evidence in his favor considered, and its rejection cannot be overlooked. In *Lamb* v. *People* Judge DAVIES classes among the exceptions to the general rule that the character of deceased is not a subject of inquiry, cases where the assault was first commenced by deceased, and the claim of the prisoner is that the killing was in self-defense. The evidence of the prisoner in this case is directly to this effect. It is no answer to the rejection of the evidence to say that the proof is very strong against the claim of the prisoner. The evidence, when received, would have been for the jury.

In *Eggler* v. *People* and in *Blake* v. *People* such proof was received upon the trial. In *Lamb* v. *People* it was refused, and the conviction was reversed by the General Term. It thus appears in cases like this that it has been customary to receive the evidence, and the Court of Appeals have expressed no disapproval of the legality of the evidence.

Upon the whole case, therefore, the conviction should be reversed, and a new trial ordered in the Oyer and Terminer.

DYKMAN, J., concurred.

GILBERT, J. :

I can find no evidence which would have justified a verdict of justifiable or excusable homicide, and therefore think that the evidence offered of the violent character of the deceased was inadmissible. In other respects I concur.

Judgment reversed, and new trial granted in the Oyer and Terminer in Rockland county.