## PARR v. LODER.

(Supreme Court, Appellate Division, Second Department.  June 12, 1903.)

**1. MALICIOUS PROSECUTION—LARCENY—EVIDENCE—COMPETENCY.**

In malicious prosecution it appeared that defendant had been appointed a commissioner to take evidence in an action pending in another state, and that after the evidence of plaintiff and his wife had been taken the papers passed into the possession of plaintiff, and that defendant then instituted a prosecution against plaintiff for larceny of the papers.  The evidence was conflicting as to whether the papers passed into the hands of the plaintiff with defendant's consent or whether plaintiff had seized the papers and taken them forcibly.  *Held*, that it was error to refuse to admit in evidence a letter of instructions which had been sent to defendant, and which instructions required him to return the papers without the same being out of his possession.

Woodward, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by Benjamin Parr against Noah Loder, Jr.  From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.  Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Theodore H. Silkman, for appellant.

Ralph E. Prime, for respondent.

HOOKER, J.  The defendant was appointed a commissioner to take evidence for use in an action pending in one of the courts of the state of Tennessee.  The plaintiff and his wife were to be examined as witnesses.  Pursuant to an agreement of the parties to this action, the commission was delivered to the plaintiff, who lived in Yonkers, and later the defendant went to that city and took the depositions. After that had been done, the plaintiff swears that he took the papers, stating that he desired to consult his attorney in relation thereto, for the purpose of clearing up some matters that he was in doubt about; that the defendant consented, and that it was arranged that the papers should be delivered to the defendant later.  The defendant, however, denies this, and his evidence tends to show that after the testimony had been taken the plaintiff grabbed the papers and refused to deliver them back to the defendant, over the latter's protest and his explanation that he was without power to consent that they should leave his possession.  Thereupon defendant procured the plaintiff's arrest, charging him with larceny of the commission.  After a hearing the accused was discharged, and later he brought this action for malicious prosecution, which has resulted in a verdict for the plaintiff. From the judgment and the order denying motion for new trial the defendant appeals.

The defendant during the course of his evidence testified:  "The commission in evidence (Plaintiff's Exhibit C), which you hand me, I received from Mr. Charles Gerding, and at the same time I received with it certain instructions.  The paper which you hand me contains these instructions.  That is the paper I received."  This letter of instructions was then offered in evidence, but the court sustained an ob-

jection thereto, and defendant excepted. The letter required the commissioner to certify at the end of the depositions that they were sealed by him and put in the post office, properly addressed, without the same being out of his possession or altered after they were taken.

The judgment must be reversed for the error of the court in excluding this letter of instructions. A sharp question of fact was litigated as to whether the plaintiff forcibly took the papers, or whether they passed into his possession with the defendant's consent. This had a direct and considerable bearing upon the question of probable cause. In actions for malicious prosecution it is competent upon disputed questions of fact as to malice and probable cause to show anything which would have operated on the mind of one of the parties in the direction of his contention. English v. Major, 59 Hun, 317, 12 N. Y. Supp. 935; Owens v. New Rochelle Coal & Lumber Co., 38 App. Div. 53, 55 N. Y. Supp. 913; Heyne v. Blair, 62 N. Y. 19. The defendant was entitled to present this evidence to the jury, and it cannot be said that its admission would not have affected the result. The judgment and order appealed from should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, costs to abide the event.

BARTLETT and JENKS, JJ., concur.

HIRSCHBERG, J. I concur in the opinion of Mr. Justice HOOKER. It is quite plain that the case turned on the question whether or not the plaintiff held the papers with the defendant's permission. On that disputed fact it is elementary law that the defendant was entitled to prove that it was his duty to keep possession of the papers, and that he was actually required to swear that they were never out of his possession. Such evidence is that of a substantive fact which tends to some extent to support the defendant's contention that he did not voluntarily part with the possession, and is in principle of the same character as the rejected evidence which caused the reversal of the conviction in Stokes v. People of the State of New York, 53 N. Y. 164, 174, 13 Am. Rep. 492.

WOODWARD, J. (dissenting). I am unable to concur in the decision which this court is about to make. This is an action to recover damages for malicious prosecution. In August, 1901, the defendant, a young lawyer located in New York, received a commission, issued by a court of Tennessee, to take the testimony, upon written interrogatories, of the plaintiff and his wife, in connection with the title to certain lands in that state, which they had recently sold. The commission was in blank, the name of the defendant not having been inserted, but he was authorized by letter to write in the name. He had some negotiations with the plaintiff in reference to taking the testimony, and it was finally arranged that the defendant should go to the home of the plaintiff in Yonkers at a given time, and there take the testimony of the witnesses. At the meeting at which this arrangement was made, and before the defendant had written his name in the commission, he delivered the commission and the interrogatories to the plaintiff, who had the same in his possession up to the time when the parties

82 N.Y.S.—66

met in Yonkers for the purpose agreed upon. They met as had been arranged, and the commission was filled in and the evidence of the plaintiff and his wife was taken. At this point there is a material disagreement as to what occurred. The plaintiff's story is that he took the papers, explaining to the defendant that, as the same related to some matters about which he was in doubt, he desired to submit them to his attorney; that the defendant acquiesced in this, and entered into an arrangement by which the papers were to be delivered on the following day, after the plaintiff had had an opportunity to consult his attorney. The defendant's story is that the plaintiff grabbed the papers, and upon demand refused to deliver them into the custody of the defendant, although the latter explained to him that he had no right to part with the possession of the same. Subsequently the defendant went before a magistrate and lodged information, charging the plaintiff with larceny of the commission, placing its value at $20. The plaintiff was arrested, and after a hearing was discharged. He then brought this action for malicious prosecution, and the jury has returned a verdict for $250 damages, upon which judgment has been entered. The defendant appeals to this court.

It is now suggested that the complaint does not sufficiently allege malice on the part of the defendant, and that the evidence does not clearly and affirmatively establish such malice. The complaint alleges that "on August 21, 1901, at the city of Yonkers, Westchester county, N. Y., the above-named defendant falsely and maliciously, and without any reasonable or probable cause whatsoever therefor, and well knowing the same to be wholly false and untrue, charged this plaintiff with the crime of larceny"; and that "said prosecution, and charge, arrest, and trial, were instigated, procured, and set on foot by the defendant in this action unlawfully and maliciously, and without any reasonable or probable cause whatsoever therefor"; and that "by reason of such unlawful and malicious prosecution this plaintiff was deprived of his liberty," etc. The question as to the sufficiency of the complaint does not appear to have been raised in the court below, the motions for dismissal and for a direction of a verdict being based upon the proposition that the plaintiff had failed to establish a cause of action by the evidence, and that "it appears, first, as a matter of law, that the defendant had probable cause to make the complaint which he did make, so far as the statement of facts contained in it is concerned; and, secondly, that there is no evidence to show that the defendant acted maliciously." Under these circumstances, the defendant cannot now be heard to question the sufficiency of the complaint, and the questions of fact were, we believe, properly submitted to the jury. There was a clear conflict of evidence. Two distinct theories were presented to the jury, and the verdict is against the defendant. The plaintiff's version, which has been accepted as the true one by the jury, puts absolutely out of the question any plausible theory that the defendant had probable cause to believe the plaintiff had been guilty of larceny. If the defendant permitted the plaintiff to retain possession of the papers, then he could not have believed that the plaintiff had stolen them, and his action in causing the arrest of the plaintiff on a charge of larceny could have no possible justification. The law is as

well established as any rule in this state that where want of probable
cause is proved the jury are at liberty from that fact to infer that the
prosecution was prompted by malice.   Willard Bartlett, J., in Langley
v. East River Gas Co., 41 App. Div. 470, 473, 58 N. Y. Supp. 992, and
authorities there cited; Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed.
116; Reed v. Home Savings Bank, 130 Mass. 443, 445, 39 Am. Rep.
468.   It is true that the jury is not bound to draw this inference (Jen-
nings v. Davidson, 13 Hun, 393), but where the evidence shows that
there was no probable cause, and in a case where the defendant must
be presumed to have known the facts, the jury has the right to infer
that the prosecution was prompted by malice.   Heyne v. Blair, 62
N. Y. 19, 22, and authorities there cited.   Probable cause is the exist-
ence of such facts as would excite the belief, in a reasonable mind, act-
ing upon the facts within the knowledge of the prosecutor, that the
person charged was guilty of the crime (Wheeler v. Nesbitt, 24 How.
[U. S.] 544, 551–2, 16 L. Ed. 765); and, accepting the plaintiff's ver-
sion of what occurred on the occasion of the defendant's visit to his
home, there could have been no possible ground for a reasonable
minded man to reach the conclusion that the plaintiff had intended to
commit the crime of larceny, and under such circumstances the in-
ference of malice flows naturally and irresistibly from the facts estab-
lished.

Upon the trial of this action the defendant offered in evidence the
letter of instructions which came with the commission, which required
the commissioner to certify at the end of the depositions that they
were sealed by him and put in the post office, properly addressed, with-
out the same having been out of his possession or altered after they
were taken.   This was·objected to, and the letter was excluded, and
the majority of this court hold that this constitutes reversible error.
I do not read the law in this light.   The defendant in this action
caused the arrest of the plaintiff, charging him with larceny in forcibly
taking and keeping, against the protest of the defendant, the commis-
sion mentioned above.   The plaintiff was subsequently given a hear-
ing, and was discharged from custody, and in this action for malicious
prosecution he is called upon to establish, not only that he has been
arrested and discharged, but that the prosecution was actuated by
malice and was instituted without probable cause.   "Malice, either
express or implied, and the want of probable cause, must both concur."
Farmer v. Darling, 4 Burr, 1791; Stewart v. Sonneborn, 98 U. S. 187,
193, 25 L. Ed. 116, and authorities there cited.   Anything the plaintiff
was called upon to establish by evidence could, of course, be rebutted,
and the question here presented is whether this letter of instructions
tended "to induce a belief or strong suspicion, in the mind of a reason-
able man, of the guilt of the accused of the crime charged."   Bacon
v. Towne, 4 Cush. 217, 239; 2 Greenleaf on Evidence, 455; Anderson
v. How, 116 N. Y. 336, 339, 22 N. E. 695; Wass v. Stephens, 128
N. Y. 123, 128, 28 N. E. 21, and authorities there cited.   What consti-
tutes probable cause, where an arrest has been made, does not depend
upon the question whether an offense has been actually committed, or
upon the innocence of the accused, but upon the prosecutor's belief
of his guilt, based upon reasonable grounds (Wass v. Stephens, 128

N. Y. 128, 28 N. E. 21, and authorities there cited); and, if this letter of instructions had a tendency to afford a reasonable ground for the belief that the plaintiff had stolen the papers involved, then it was competent evidence of a probable cause, and had a direct bearing upon the issues presented in an action for malicious prosecution. Bacon v. Towne, 4 Cush. 217, 239, and authorities there cited. Conversely, if the letter would not tend to establish such "a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty" (Bacon v. Towne, 4 Cush. 238, 239), it had no bearing upon the question and could not be competent. Assuming the defendant to have known the contents of this letter, with its instruction not to permit the executed commission to pass out of his possession, what bearing could that have upon the question of whether the plaintiff had forcibly taken and retained the commission? The question is not what the defendant thought in respect to these papers, but whether the facts within his knowledge at the time of making the information against the plaintiff were such as to raise a reasonable suspicion that a crime had been committed and that the plaintiff was guilty of that crime. His mental attitude toward the papers, or his convictions upon a question of religion, or upon any other subject, is not important; it is what he had a right, as a reasonable and prudent man, to believe in respect to the alleged crime of larceny which was at issue, and it would be just as competent to show that he had religious scruples against parting with papers as to show that he had instructions which would be violated by parting with them. "It were infinite," says Lord Bacon (Bacon's Max. Reg. 1), "to consider the cause of causes, and their impulsions one of another; therefore it contenteth itself with their immediate cause, and judgeth of acts by that, without looking to any further degree." The question of whether the defendant had reasonable grounds for believing that the plaintiff had committed the crime of larceny depended upon what actually took place at the home of the plaintiff in the city of Yonkers, and not upon the mental attitude of the defendant toward the papers. The defendant has testified that he told the plaintiff that he had no right to part with these papers, so that he has had all of the advantage which the letter could afford, and the jury has refused to believe him. The theory of the majority of this court appears to be that if this letter was in evidence it would establish that the duty of the defendant was to retain the papers in his possession, which would raise the presumption that he had attempted to discharge his duty, and upon this presumption might be builded the further presumption that he had told the truth in respect to what occurred at the Yonkers home; but the law does not permit of a presumption based upon a presumption (22 Am. & Eng. Ency. of Law [2d Ed.] 1236; O'Gara v. Eisenlohr, 38 N. Y. 296, 301), and the presumption that the defendant would tell the truth about what occurred at the home of the plaintiff is just as strong as the presumption that he would do his duty, which is but another form of stating the same presumption. If the presumption of truthfulness which was due to the defendant was not sufficient to carry his case before the jury, the presumption that he would

do what he might conceive to be his duty with respect to the commission would not aid him in any legitimate way. The only purpose of the letter would be to introduce a false issue into the controversy, affording ground for speculative conjecture, but no foundation for determining whether the defendant, in causing the arrest of the plaintiff, had reasonable grounds for believing that a crime had been committed and that the plaintiff was guilty of the crime. It seems to me entirely obvious that the contents of a letter, written by a person in Tennessee, in reference to a commission to take evidence in the state of New York, could not afford any possible evidence to the mind of the defendant that the plaintiff, some time subsequent to the writing of the letter, had committed larceny in stealing or forcibly holding possession of the said commission, and this was the issue presented here. The only competent evidence, under the conceded circumstances, was what was done in the home of the plaintiff on the occasion of the defendant's visit for the purpose of taking testimony. The defendant alleges that after the testimony was closed the plaintiff grabbed the commission and refused to surrender it, although the defendant insisted that he had no right to part with the same. The plaintiff, while conceding that he took and retained the paper, testifies that he did this in pursuance of an understanding with the defendant that he should show them to his attorney, and then deliver them to the latter at a time and place agreed upon. It was right at this point that the larceny was committed, if it was ever committed, and the contents of the letter of instruction could not throw any light upon this occurrence, or afford any ground for the defendant to believe or disbelieve anything in reference to the plaintiff's alleged crime. The plaintiff and defendant were both present. The defendant knew absolutely whether the plaintiff committed the crime of larceny or not, and, if he caused the arrest of the plaintiff under the circumstances narrated by the latter, he did so where the facts within his knowledge did not indicate that a crime had been committed. They did not tend to cause a man with knowledge of the law to suspect or believe that it had been violated. The defendant was bound to know the law (Hazzard v. Flury, 120 N. Y. 223, 227, 24 N. E. 194), and the letter of instructions would not have disclosed any evidence from which the inference might be drawn that the defendant had reason to suspect or believe that a crime had been committed or that the plaintiff had stolen the commission. It had no bearing upon the question of probable cause, and was clearly incompetent.

But it is suggested that this letter was of the same character of evidence as that involved in the case of Stokes v. People, 53 N. Y. 164, 174, 13 Am. Rep. 492, where the judgment was reversed because of an exclusion of the testimony. Stokes was on trial for the murder of James Fisk. The defense was based upon excusable homicide upon the ground that the act was perpetrated by the accused in defending himself against an attempt by the deceased to murder or inflict some great bodily injury upon him, and the further question was presented whether it was not perpetrated in resisting an attack made upon him by the deceased from which he had reasonable ground to apprehend a design to murder or inflict upon him some great bodily injury. The

defense offered to prove that James Fisk, a short time prior to the tragedy, had made violent threats against Stokes; that he had declared that he "would beggar him first and then kill him"; that "I go prepared for him all the time; so sure as my name is Jim Fisk I will kill him;" that "I would kill him as soon as I would a ferocious dog." This was objected to by the prosecution and rejected by the court. Upon appeal it was held that this evidence of threats on the part of Fisk was competent, although it had not been communicated to Stokes, because it would show an attempt to execute them probable when an opportunity occurred, and the more ready belief of the accused would be justified to the precise extent of this probability. Stokes v. People, 53 N. Y. 174, 13 Am. Rep. 492. That is, the defense being a justification, it was competent to show that Fisk had threatened to murder Stokes, not as tending to show the mental attitude of Stokes toward Fisk, but as bearing upon the probability of the defense that Stokes had killed Fisk while defending himself against an attack on the part of the latter. Obviously, if Stokes had been killed in the encounter, it would have been competent to show these threats on the part of Fisk, as tending to show his intention in the matter (Stokes v. People, 53 N. Y. 175, 13 Am. Rep. 492); and no good reason suggests itself why the same threats were not competent in support of the defense that Stokes killed Fisk in repelling the threatened attack. In distinguishing the Stokes Case in People v. Osmond, 138 N. Y. 80, 86, 33 N. E. 739, 741, the court say:

"There the question was in regard to the character of the encounter which took place between the parties when the shooting was done. Was it done by Stokes in self-defense, or was he the aggressor? It was held competent to prove the fact that the deceased had himself made violent threats against Stokes shortly before, even though those threats had not been communicated to defendant. This was upon the ground that the jury might consider the fact in determining the character of the encounter between the parties."

Wharton, in his work on Criminal Law (section 1027), has appreciated the limitation upon this kind of evidence, and says:

"Where the question is as to what was deceased's attitude at the time of the fatal encounter, recent threats may become relevant to show that this attitude was one hostile to the defendant, even though such threats were not communicated to defendant. The evidence is not relevant to show the quo animo of the defendant, but it may be relevant to show that, at the time of the meeting, the deceased was seeking defendant's life."

Wiggins v. Utah, 93 U. S. 465, 467, 23 L. Ed. 941, and authorities there cited.

That is, the evidence is not relevant to show the motives actuating the defendant in committing the act, but to show that the attitude of the victim was such as to make probable the theory of the defense that the killing was done in repelling the attack of the deceased, upon the same ground that the prosecution, under reversed circumstances, might show the threats as indicating the intention and motive for the crime. How this rule can have any bearing upon the question here presented I confess my mind is not sufficiently subtle to grasp. The plaintiff had nothing to do with uttering the letter; it does not suggest that the plaintiff has committed the crime of larceny; it does not purport to make any disclosures as to the attitude of the plaintiff toward

the defendant or of the defendant toward the plaintiff, or to have anything to do with the alleged crime in any way, shape, or manner.   It simply tells the defendant what to do with the commission after he has taken the evidence.   I fancy if the party in Tennessee had sent the defendant a dog, and had admonished him not to let the dog get out of his possession, but to return the same to him at a given time, and the same transaction had occurred at the plaintiff's home in reference to the dog that took place in reference to this commission, no one would think the instructions had any bearing on the question of whether the dog had been stolen, and yet there is no difference in principle, and the rule contended for would open the door to all kinds of testimony tending to show the metal attitude of people independently of the results of their own actions.   In the case of a dispute over facts, we should have evidence of the prejudices, passions, or religious professions of the parties, as tending to show that they would or would not do the things which were in controversy, and that certainty which is demanded in evidence would give place to hypothesis and speculation.   Evidence, to be competent, must have some relevancy to the issue to be tried, and in an action for malicious prosecution, upon the issue of probable cause to believe that a crime has been committed, it has never, until the decision of this court, been the law of this state that testimony tending to disclose a probable mental attitude on the part of the defendant toward the property involved in the alleged crime could have any bearing upon the question.   It is a new rule, standing without precedent so far as I have been able to discover, and I cannot join in its enunciation.

I think that the judgment appealed from should be affirmed.