Okey, J.
By an indictment found in tbe court of common pleas of Hamilton county, at tbe November term, 1881, "William McHugb was charged with murder in tbe first degree. Testimony offered by tbe state, shows that on tbe morning of July 23, 1881, near tbe intersection of Sixth and Plum streets, Cincinnati, in tbe presence of a large number of persons, in tbe public market, be killed bis wife, Sophie Mc-Hugh, by stabbing her with a large knife and tbe indictment charges the crime. He lias been thrice convicted of murder in tbe first degree, in trials upon this indictment, and as often sentenced to suffer death. Tbe judgments upon tbe first and second trials were reversed by this court, and tbe cause remanded for new trial; and a motion is now made, on *156 behalf of the prisoner, for leave to file a petition in error to reverse the third judgment and sentence.
The ground of reversal of the first judgment was clearly stated in the opinion of Longworth, J. (38 Ohio St. 153), but the report upon the question is quite brief. It is claimed, on behalf of the prisoner, that the same question is presented on this motion. On the second reversal the result announced was published, but there was no report. Por these reasons, and for the further reason that we infer from remarks of counsel that the principle upon which this court proceeds, in the exercise of its jurisdiction in error in criminal cases, is not entirely understood, we deem it proper to state more fully the action of the court on the former hearings.
On the first trial of the prisoner, M. D. Osgood, summoned as a "juror, stated on his voir dire that he had formed and expressed an opinion as to the prisoner’s guilt, and that the opinion was formed by reading accounts of the homicide in the newspapers, and the published account of the examination before the coroner. The prisoner’s counsel challenged the juror for cause, the court overruled the challenge,, and for that error this court reversed the judgment.
By the constitution (art. 1, § 10), “ an impartial jury ” is guaranteed to the accused. “ To secure this right, it is necessary that the body of triers should be composed of men indifferent between the parties, and otherwise capable of discharging their duties as jurors.” Cooper v. State, 16 Ohio St. 328. “The number must be twelve; they must be impartially selected, and must unanimously concur in the guilt of the accused, before a conviction can be had.” Work v. State, 2 Ohio St. 296, 304. “Any act requiring or authorizing such trial by a jury, partial and biased against either party, would be a violation of one of the essential elements of the jury referred to in, and secured by, the constitution.” Stokes v. People, 53 N. Y. 164, 172. And “ what will constitute an abridgment of the right is, of necessity, a judicial question.” Frazier v. State, 23 Ohio St. 501, 552.
Acts providing in some measure what should constitute a partial and what an impartial juror, were passed in 1860 (2 S. *157 & C. 1197), in 1869 (66 Ohio L. 307), and in 1872 (69 Ohio L. 11). The latter act was incorporated into the act of 1877 (74 Ohio L. 345), and carried from, that act into Rev. Stats. § 7278, as follows: “The following shall be good cause of challenge to any person called as a juror on any indictment. . . . 2. That he has formed or expressed an opinion as to the guilt or innocence of the accused ; bub if a juror state that he has formed or expressed an opinion as to the guilt or innocence of the accused, the court shall thereupon proceed to examine such juror, on oath, as to the ground of such opinion, and if it appear to have been founded upon reading newspaper statements, communications, comments, or reports, or upon rumor or hearsay, and not upon conversations with witnesses, or reading reports of their testimony, or hearing them testify, and the juror state, on oath, that he feels able, notwithstanding such opinion, to render an impartial verdict npon the law and evidence, the court, if satisfied that he is impartial, and will render such verdict, may, in its discretion, admit him as competent to serve in such case.”
In Frazier v. State, 23 Ohio St. 551, the question presented was precisely the same as in McHugh v. State, 38 Ohio St. 153, that is, whether under such a statutory provision, a juror was incompetent if he had formed and expressed an opinion as to the guilt of the prisoner, where that opinion was formed from newspaper reports, and from reading the testimony delivered at the coroner’s j ury. The court in Frazier's ease was unanimous in holding that by the very terms of the statute the juror was clearly incompetent, and for overruling the prisoner’s challenge to such juror this court properly reversed the judgment. In Erwin v. State, 29 Ohio St. 186, this court unanimously followed and approved that decision, and again unanimously followed and approved it in McHugh v. State, 38 Ohio St. 153.
The duty of regarding every record brought before this court for review, as being wholly free from error until the contrary is clearly shown, is one which we endeavor to faithfully perform ; and, except as to matters relating to jurisdiction, or the practice of the court, or where counsel have overlooked a *158 statute or decision of this court controlling the case, the court confínes itself, ordinarily, to the errors assigned as grounds of reversal. Nor does it necessarily follow that the judgment will be reversed because error has intervened. “ In order to justify the reversal of a judgment on error, the record must affirmatively show, not only that error has intervened, but that it was to the prejudice of the party seeking to take advantage of it.” Scovern v. State, 6 Ohio St. 288, 291. Ordinarily, if a statutory provision or principle of the common law, applicable to the case, is disregarded on the trial of a person charged with crime, where its enforcement would tend to preserve his right to an impartial trial, he is to be regarded as prejudiced in his substantial rights, as he is always to be deemed so prejudiced where he is deprived of a constitutional guaranty designed for the protection of the person — still, if there has been a failure to observe some mere matter of form, where the officer or other person charged with the duty acted in good faith, the court must determine whether the failure to observe such form tended in any way to deprive the accused of a fair trial, and whether, looking to the statutory provisions relating to criminal procedure, it was intended that such failure should necessarily require a reversal of the judgment.
The error committed on the prisoner’s first trial was manifestly prejudicial to him, for it deprived him of a right guaranteed by statute to all persons accused of crime, and it can be readily seen that the enforcement of the provision might operate to his advantage on the trial; and, under such circumstances, we are vested with no discretion to refuse a reversal, whether the error occurs on the first or any subsequent trial. Indeed, it would be far better that William McHugh should go wholly unpunished, than that such statutory provision, or any plain principle of law, should be set at naught on his trial.
An exception was taken on McHugh’s second trial, for which this court, as already stated, was again compelled to reverse the judgment. The counsel of McHugh called as a witness in his behalf Mi\ Lillus, by whom he proposed to prove matter which was clearly competent, but the court would not permit the evidence to be given, and thus committed an *159 error for which a judgment should be reversed. Cowan v. Kinney, 33 Ohio St. 422. While not denying such general rule, counsel for the state contended that the case formed an exception, because on such second trial of McHugh the court excluded such evidence of Lillus upon the ground that he had remained in court, during part of the trial, and heard other witnesses testify, and in so doing had violated an order which the court had made, at the commencement of the trial,'for the separation of witnesses. There was nothing, however, to show that McHugh or his counsel had in any way encouraged the witness to violate the order, or even knew, when he was called, that he had violated it, and the court found as a fact, that the witness did not even know that the order had been made. Dickson v. State, 39 Ohio St. 73, was direct and sufficient authority for holding such action of the court to be clearly erroneous, and hence it was the imperative duty of the court to reverse the judgment. Of what avail is the constitutional provision (Art. 1, § 10), that the accused shall “ have compulsory process to procure the attendance of witnesses in his behalf,” if the testimony of witnesses is to be excluded on such ground ?
It is due to the judge presiding at McHugh’s second trial to say, that the ruling for which we reversed the judgment was doubtless based on remarks of Caldwell, J., in Laughlin v. State, 18 Ohio, 99, as to the discretion of the trial judge, and that Dickson v. State had not been decided at the time of McHugh’s second trial. But the remarks in Laughlin’s case, above referred to, were disapproved, and the rule upon the subject settled to the entire satisfaction of all the judges of this court, in Dickson’s case, and to reverse the second conviction of McHugh was simply to follow that decision.
With this statement as to the first and second trials of McHugh, showing that as errors plainly prejudicial to him occurred on each trial, the duty of reversing the judgments was imperative, we will now consider whether any of the alleged errors occurring on the third trial afford sufficient ground for granting leave to file a petition in error. To determine that matter, we have bestowed upon the case the same laborious, *160 painstaking care it would have received if leave to lile a petition in error bad been granted, and the case stood for hearing on such petition ; and I will now state our views with respect to such questions, presented on behalf of the prisoner, as we think are of sufficient importance to be noticed in a report. It is assigned for error—
1. George Le Boiteau, called as a juror, testified that he had formed an opinion as to the guilt of the accused. Being challenged for such cause, he stated the opinion was formed from reading in the newspapers an account of the murder, and not from talking with the witnesses, hearing them testify, or reading their evidence, and that while it would require evidence to remove such opinion, he felt satisfied he could divest himself of it, and render such verdict as the evidence required. The court, being satisfied the juror would render an impartial verdict, overruled the challenge, and the counsel for the prisoner excepted. The court in so holding simply followed the plain provisions of the statute. The only question was whether the statute (Rev. Stats. § 7278), now repealed and re enacted in a changed form (81 Ohio L. 53), was in conflict with the provision of the constitution guaranteeing to every person accused of crime “an impartial jury and that question was settled in the cases already cited : Cooper v. State, Frazier v. State, Erwin v. State, McHugh v. State, holding the act to be valid. Indeed, Cooper v. State and Frazier v. State are direct authorities to sustain the court in overruling such challenge for cause; and, assuming that we have jurisdiction to reverse judgments for errors in impaneling jurors (81 Ohio L. 53), still we are clear that in this respect there was no error.
Looking to the origin and history of the phrase, “ an impartial jury,” we find it had, at the time it was employed in the constitution, no such fixed meaning as to preclude legislation defining, in some measure, what shall constitute such jury. Of course a statute authorizing a trial by jurors wlm have prejudged the case would be invalid, and to permit such a juror, against a prisoner’s objection, to become one of his triers, under any statute upon the subject, would be clearly erroneous ; still, the framers of the constitution were not ignor *161 ant of the increasing demand for information on subjects of public interest, and the efforts which would be made to meet' that demand by means of the press, and they could not fail to see that accounts more or less accurate, with respect .to nearly every heinous offense, would find their way to the home of every intelligent person. There was no intention, surely, to exclude from our juries persons of intelligence — persons who read newspapers — and we do not hesitate to say, it was never intended that' an opinion formed from such information should necessarily disqualify a person as a juror; and we hold the mere fact that a juror has a strong impression as to the prisoner’s guilt, resulting from information from almost any source except personal knowledge of the facts, does not necessarily render the juror incompetent, even if he characterizes the impression as an opinion. If the juror has personal knowl-, edge of the material facts of the homicide, or has passed upon them as a juror, it may be that he is necessarily an incompetent juror, and possibly other facts may show him to be necessarily incompetent; but, ordinarily, where the juror testifies that he believes, and the court finds as a fact, that he would, if selected, render an impartial verdict upon the evidence, he is, , unless his competency is limited by statute,' an “ impartial ” juror. Of course, error will be shown, if it be made to appear that the presiding judge has clearly abused his discretion. The difficulty was, at McHugh’s first trial, not as to the constitutional provision guaranteeing an impartial jury, but that under the statute then in force (Rev. Stats. § 7278), Osgood was plainly an incompetent juror, for he had read the evidence given at the coroner’s inquest, and had formed, and at the trial still retained, an opinion, as to the prisoner’s guilt, and it was manifest error, in view of that statute, to permit him to act as such juror against the prisoner’s objection; and hence the reversal. To refuse to reverse would have been equivalent to a repeal of the statute by the court. But by the same statute, Le Boiteau was, as already stated, clearly a competent juror, for his opinion was formed, not from reading testimony, but simply from reading a newspaper account of the homicide, anJ the prisoner’s challenge'of him was, in view .of that statute *162 properly overruled, and bence there was no error in that respect. It may be added that if the statute as it now exists (81 Ohio L. 53) had been in force at the first trial of McHugh, Osgood would have been a competent juror — assuming the act to be constitutional — and the judgment would have been affirmed.
2. Error in overruling the challenge to the array. Before disposing of this alleged error, it is proper to say that our power to review a conviction for an error in overruling such challenge has been questioned. We have no jurisdiction in error cases except as given by statute, and the legislature may enlarge, restrict or deny such jurisdiction, even as to pending ases, as it may deem proper. Lafferty v. Shinn, 38 Ohio St. 46, 48; Knapp v. Thomas, 39 Ohio St. 377, 383. Error lies in criminal cases, but “ in the supreme court, only errors of law occurring at the trial, or appearing in the pleadings or judgment, can be reviewed.” (80 Ohio L. 170.) And the statute further provides, as to challenge to the array, that “ such challenge shall only be made before the jury is impaneled and sworn.” (Rev. Stats. § 5175.) The argument is that such challenge to the array must be made before the trial begins, and hence an error in overruling such challenge is not an error occurring on the trial, and hence for such error this court cannot reverse. As the question is not wholly free from difficulty and its determination is not essential to a decision of this case? we will regard such objection to our jurisdiction for the purposes of this case, as not well taken, and reserve the question until its determination becomes necessary.
Thirty-six jurors not having been obtained out of the first venire,issuedunder Rev. Stats. § 7267, a second venire was issued under section 7268, in which appeared the name of John F. Hetzler, and the sheriff, unable to find John F. Hetzler, served John C. Hetzler, and returned upon the venire that he had served John F. Hetzler. When that name was called in court, John C. Hetzler stepped forward, but upon explaining that his name was not John F. Hetzler, he was directed to stand aside, and the call proceeded to the end of the second venire. To this no objection was made. After the names on the second *163 venire bad been called, and thirty-six jurors, not including Retzler, had answered to the call and appeared in the box, counsel for the prisoner challenged the array, basing the challenge on Rev. Stats. § 5175, which provides that the array may be challenged, when the jury “ was not selected, drawn or summoned, or when- the officer who executed the venire did not proceed, as prescribed by law, or for the misnomer of a juror or jurors.”
The provision of the statute that misnomer shall be ground of challenge to the array, no doubt applies alike to civil and criminal cases, but it is contained in that portion of the Revised Statutes relating to practice in civil cases. The provision found its way into our legislation in 1873 (70 Ohio L. 171), from which it was carried into the revision of the Civil Code enacted in 1878 (75 Ohio L. 636), and from the act of 1878 it was, as above stated, incorporated into part three of the Revised Statutes, which relates to civil practice and procedure (Rev. Stats. § 5175). Occurring in that part of the statutes, we are required to construe the provision in connection with section 4948, in the same part, which provides that “ the provisions of this part, and all proceedings under it, shall be liberally construed, in order to promote its object and assist the parties in obtaining justice.” And see section 5115. This doubtless would be a sufficient answer to such challenge in a civil ease, where no injury was shown, and I am unable to see why sections 5175 and 4948 should not be construed together in this case. However that may be, when a challenge is made in a criminial case under section 5175, that section should not only be construed in connection with the provisions of the Revised Statutes relating to criminal procedure, but the provisions should be construed as in harmony with each other in respect to the manner in -which objections merely formal should be regarded. Bishop’s Written Laws, § 86 et seq.
Such misnomer as is here alleged was, under the former practice, fátal in an indictment, where it occurred in the name of the injured party. Price v. State, 19 Ohio, 423. But under Rev. Stats. § 7216, such mistake will not avail the prisoner, unless the court before which the trial takes place is of *164 opinion that the mistake is material to the merits of the case, or may be prejudicial to the defendant, or the jury find the person intended to be described in the indictment and the person described in the proof, are not one and the same person. Mead v. State, 26 Ohio St. 505. An indictment cannot be held invalid for a “ defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant on the merits” (Rev. Stats. § 7215). Motion by a defendant for new trial in a criminal case must be based on “ reasons affecting materially his substantial rights” (Rev. Stats. § 7350). And as we have seen, error is not ground of reversal in a criminal case unless it be “ to the prejudice of .the party.” Seovern v. State. Construing the above statutory provisions, and others •upon the subject which might be mentioned, as mjpari materia, we have no hesitancy in saying that a court would not be justified in sustaining a challenge to the array on such merely technical ground, where, as here, it was not rendered reasonable or probable that the prisoner was injured in any respect, in his substantial rights, by reason of the mistake. Much less would this court, in view of the rule stated in Scovern v. State and other cases, be justified in reversing a conviction for a refusal to sustain such challenge. Besides, it is urged by the state that John P. Hetzler never appeared, and that the array within the meaning of the statute, is the first thirty-six who answer, and hence, invoking technicality against technicality (6 Ohio, 21), there was no error. But we need not enter upon that question, for the reasons already stated.
3. Counsel for the prisoner presented to the court certain. papers containing propositions, and asked the court to charge the propositions to be sound law, applicable to the case, and proper for the consideration of the jury. Some of the propo•sitions were, in form, substantially brief arguments in' favor of the prisoner, and the court properly refused them for that reason. Others to which that objection did not apply were not, in terms, given or refused, though substantially correct and pertinent to the case. This, it is insisted, was an error for which the judgment should be reversed, the statute providing : “ When the evidence is concluded, either party may request *165 instructions to the jury on points of law, which shall be given or refused by the court, which instructions shall be reduced to writing, if either party request it.” Rev. Stats. § 7300, cl. 5. Undoubtedly the court must comply with the statute. The instructions, if law applicable to the case, must be given when the request is made. To refuse is error. But the’court is not bound to adopt the language of counsel. The judge may select his o'wn language; and where the charge is not substantially given, it must be regarded as refused. We do not think there is any thing in this respect of which the prisoner can justly complain, when we consider all that the court said to the jury.
4. Other errors are alleged, but we do not deem it necessary to make any report with respect to them. We are unanimous in holding that no one of the objections is well taken. The prisoner has been ably prosecuted and ably and zealously defended, and the most careful examination of the whole record leads us to the conclusion that his last trial was in all respects entirely fair.

Motion overruled.