Dye, J.
The defendant-petitioner, Norman Brabson, has appealed directly to this court, by permission of the Chief Judge (People v. Brabson, 8 N Y 2d 913), from an order of the Court of General Sessions, New York County, denying, after a series of hearings, his motion for a writ of error coram nobis to vacate and set aside a judgment of death rendered June 24, 1940, following a trial by jury in the Court of General Sessions, wMch judgment was affirmed by this court by a divided vote. At the same time this court reversed by a divided vote the convictions of two codefendants, Joseph Feolo and Albert Mastrone (People v. Feolo, 284 N. Y. 381 [1940]) (Note[1]).
In the meantime, this petitioner has pursued a series of post-judgment remedies in an effort to vacate the 1940 conviction (Note[2]). TMs appeal concerns the latest of such applications, which is in the nature of a writ of error coram nobis. It was filed July 31, 1956, alleging, inter alia, as grounds for relief that the court had wrongfully interfered with and demed his right to be represented by counsel of his own choosing.
The defendant claims that after this court reversed his conviction on Ms second trial (People v. Feolo, 282 N. Y. 276 [March 5, 1940]), he was brought before the court on May 10, 1940. At that time the defendant requested the discharge of his assigned counsel and appointment of two others, whom he *176 named, to represent Mm on Ms tMrd trial. The court discharged the assigned counsel and the matter was adjourned to May 14, 1940. The Judge .then stated he would not assign any of the lawyers the defendant had before because of defendant’s statement that he lacked confidence in them. He also said he would not assign counsel selected by defendant. The Judge then selected three other lawyers who represented the defendant on his third trial and who prosecuted the appeal from his conviction to this court, where it was affirmed (284 N. Y. 381 [December 31, 1940]). Upon tMs application, defendant alleged that the court-assigned counsel were incompetent and ££ deliberately sacrificed petitioner’s life and liberty in order to gain further court appointments Upon the appeal to this court from the denial of that application, the defendant contended that in August, 1941 he received from .the official stenographer a copy of the minutes of the hearing held on May 14, 1940. Thereafter, in March, 1957, which was after the denial of his motion, he bought another copy of such minutes from the court stenographer. He alleged that the second set of minutes had been altered and that portions of the proceedings were omitted which had they been included would, he argued, have substantiated his claim of interference with his right to counsel. Defendant alleged that the submission by the People of the second set of minutes misled the court. To assure that justice was being done, we withheld decision on the appeal and, instead, ordered a hearing to determine which version of the official stenographer’s minutes was authentic (People v. Brabson, 4 1ST Y 2d 978). The lengthy hearing was conducted by a Judge of the Court of General Sessions. Upon its conclusion, an order was entered denying a renewed motion for a writ of error coram nobis. We now deal with that order.
Preliminarily, it should be stated that we have carefully reviewed the minutes of the supplemental hearing as well as the two sets of minutes and are satisfied that the version of the May 14, 1940 proceedings submitted by the People is authentic. Instead of establishing ‘£ clearly and convincingly, by a preponderance of the credible evidence ” (People v. Chait, 7 A D 2d 399, 401, affd. 6 N Y 2d 855; People v. Jones, 1 N Y 2d 665) that the minutes submitted by the People are not authentic, the petitioner resorted to unconvincing evidence by surmise and *177 speculation. He thus fell far short of meeting his burden of persuasion.
Nevertheless, in order to dispel all doubt as to the propriety of the actions of the presiding judge in those 1940 pretrial proceedings, we turn our attention now to a consideration of the proceedings held May 10,13 and 14, 1940, as they appear in the petitioner’s unsubstantiated version of the minutes.
The minutes of May 10 disclose that on that day the petitioner Brabson appeared before the late Judge James Gaebett Wallace and asked to be relieved of the services of the attorneys who had represented him as assigned counsel at his second trial and on the subsequent appeal to this court. The court granted his request, inquiring whether he was able to procure counsel for himself, to which inquiry the petitioner replied in the affirmative. At that point, Lewis Landes, an attorney, appeared in the courtroom. Brabson had written Judge Wallace a letter indicating that he intended to hire Landes to represent him. However, Landes informed the court that he had not yet filed a notice of appearance 1 ‘ because necessary financial arrangements have not been made. I am perfectly willing to appear for him if proper arrangements can be made by his family ” (emphasis supplied). At that point, the Assistant District Attorney pointed out that the trial was scheduled for the following week. A week’s postponement was then agreed upon. .
We take occasion to note that during the course of that May 10 session Judge Wallace complimented the assigned attorneys on their second-trial representation of the petitioner, as well as making a critical comment on Brabson’s dismissal of them, and, while such comment was wholly gratuitous, it was not without basis and in no way prejudiced the defendant since his retrial was set down in another part.
At the proceedings held May 13 William Bose, an attorney, appeared on behalf of Lewis Landes and informed the court that Landes had not as yet been retained, not having heard from Brabson’s family or friends. He asked that the case be set down for the following day, and Judge Wallace agreed, informing the petitioner that: “The court, of course, is very glad to have you do that [retain your own counsel] if you can, but if you cannot, you cannot put off the trial of this case pretending you are able to retain counsel when in fact you are *178 not.” It is important to recall that Brabson’s second trial had been held in 1939, a year previously. The appeal had been decided in March, 1940, two months before, and the defendant had waited all that time to seek a change of counsel. Even then, a week’s postponement had already been granted. We thus deem it to have been eminently proper for the court to inform the defendant that he would be permitted reasonable leeway but would not be permitted to make a mockery of the proceedings (cf. Lee v. United States, 235 F. 2d 219).
That leads us to the crucial events of May 14, as they appear in the petitioner’s version of the minutes of that date. Upon being informed on that day by the petitioner that he had not yet retained counsel and that he was without funds — to use the petitioner’s own words, “ I am broke ” — Judge Wallace stated his intention to assign counsel. The petitioner then urged the court to assign either Mr. Landes or William Richter, who had represented the petitioner at his first trial and had then been discharged by him after some disagreement. Judge Wallace, however, declined to do so, stating: ‘11 will not pay any attention to your suggestions as to who your counsel will be.” The petitioner places emphasis on the following exchange between Mr. Richter and the court:
‘ ‘ Mr. Richter: He [the Assistant District Attorney] means me, your Honor. The amount [received by Richter for his first trial service] was $1500. And, I am ready to defend him again, fee or not, if your Honor please.
“ The Court: I will not assign you. I always pick my own lawyers, Mr. Richter.
‘‘ Mr. Richter: The defendant asks to see me, so may I see him? He is being held under peculiar circumstances. This is aside from any assignment by the court.
“ The Court: I will assign counsel to him, and you can take up with them any questions you have to take up with the defendant.”
Taking that portion of the exchange out of context, it is susceptible to the interpretation that the petitioner was being deprived of the services of an attorney whose services he wanted and who had actually offered his services directly to the petitioner. However, when the record is read as a whole, it is apparent that both the petitioner and Richter had a completely *179 different intention. Indeed, the very next statement by Richter was: “Mr. Richter: I was in the case before and I thought because of the shortness of time and his wanting me in the case, I thought your Honor would take it under consideration ” (emphasis supplied). Thus, the court was justified in concluding that William Richter’s true motive was to have himself considered for assignment as Brabson’s counsel, which finds support in the petitioner’s own requests to the court to appoint either Richter or Landes.
In assigning counsel at that point Judge Wallace not only acted properly but he actually had no other alternative. The petitioner’s trial had already been postponed for a week. Had Judge Wallace failed to assign counsel at that point he would have been guilty of neglecting his duty. Furthermore, had he failed to provide counsel in time to prepare for trial, the petitioner’s rights might well have been violated (see People v. Koch, 299 N. Y. 378). In view of the seriousness of the crime charged, such a failure would have been violative of the Fourteenth Amendment even though an assignment of counsel had not been requested (Powell v. Alabama, 287 U. S. 45). Judge Wallace was not dealing with a defendant who had retained his own counsel (cf. People v. Price, 262 N. Y. 410), nor with one who had the means to retain counsel, and clearly not with a defendant who had evinced any desire to present his own defense. A defendant has no right to delay his trial unreasonably regardless of reality, nor do we construe the law as giving him the power to do so (see People v. Milne, 253 App. Div. 768; Stirling v. State, 38 Ariz. 120; cf. Lee v. United States, supra; Smith v. United States, 288 F. 259).
The petitioner places heavy reliance on People v. McLaughlin (291 N. Y. 480). However, the facts of that case clearly distinguish it from the case at bar. McLaughlin, accused of robbery, had appeared before the Judge at some point after 12:30 p.m. to apply for permission to obtain an attorney. The court denied his application and stated that he would assign counsel. The trial was then set down for and held at 2:00 P.M. of the same afternoon. We condemned such practice as a denial of a fundamental right “ unless he gets reasonable time and a fair opportunity to secure counsel of his own choice and, with that counsel’s assistance, to prepare to trial; no last-minute, pre~ *180 emptory assignment of counsel will serve, particularly when made at such a time and under such circumstances as practically to preclude the giving by counsel to prisoner and prisoner to counsel, of effective aid in the preparation of the case ” (291 N. Y. 483; emphasis supplied).
Here we have no last-minute, arbitrary action by the court (cf. People v. Milne, supra). The petitioner, because of an admitted lack of funds, was unable to retain his own counsel. Judge Wallace ultimately assigned experienced attorneys to represent the defendant. The trial did not commence until June 6. Even then, they would have been free, had they deemed it advisable, to request an additional adjournment. They chose not to do so (cf. Gilmore v. United States, 129 F. 2d 199, cert. denied 317 U. S. 631). The petitioner’s dissatisfaction (Note[3]) with their trial and pretrial strategy is not sufficient ground for vacating a conviction (e.g. People v. Tomaselli, 7 N Y 2d 350; Sherman v. United States, 241 F. 2d 329, cert. denied 354 U. S. 911, rehearing denied 355 U. S. 852; Moore v. United States, 220 F. 2d 198; Mitchell v. United States, 259 F. 2d 787, 789, cert. denied 358 U. S. 850).
We deem it important to note, too, at this point that Judge Wallace carefully informed the petitioner that if, at any time before trial, he were to obtain his own counsel, such counsel would be permitted by the Trial Judge to intervene in his behalf. There is no allegation that any prospective counsel was prevented from consulting with the petitioner in prison, in conformity with established procedure. We do not deem it erroneous to have refused such consultation in the courtroom, even if such a refusal did occur.
There thus remains only one basic issue to be disposed of: whether the prerogative as to the choice of assigned counsel rests ultimately with the court or with the indigent defendant. That question has been raised a number of times and has always been answered in the same manner. It is an age-old rule, both in this State (see People v. Battice, 6 A D 2d 773, affd. 5 N Y 2d 946; People v. Wansker, 108 Misc. 84; People v. Fuller, 35 Misc. *181 189) and elsewhere (McDonald v. Hudspeth, 113 F. 2d 984, cert. denied 311 U. S. 683; Commonwealth v. Novak, 395 Pa. 199; Commonwealth v. Knapp, 9 Pick [26 Mass.] 496), that, as long as assigned counsel are men of ability and integrity, the discretion and responsibility for their selection rest with the court, to be exercised free of outside interference.
We see no error in the refusal of the Judge presiding at the reordered hearing to provide defendant with document experts at public expense. Section 308 of the Code of Criminal Procedure, as we have construed it, is limited in its application to the trial of capital cases (Matter of Marcus v. Joseph, 305 N. Y. 813, affg. 281 App. Div. 336 [1st Dept.]; People v. Snyder, 297 N. Y. 81, 93). But even if section 308 were applicable to a hearing on a post-conviction remedy such as this, there was no reason for its exercise in the circumstances of this case, since it appears that the defendant had the services of two document experts privately retained by a relative. It cannot reasonably be said that any prejudice flowed from a refusal to make such services a public charge. The' hearing, as demonstrated by the voluminous record, was thorough and complete and we are satisfied that defendant’s every right was protected and every claim fully exhausted. All other contentions raised by the defendant are superficial in character and wholly devoid of merit.
The order denying the writ of error coram nobis should be affirmed.
Chief Judge Desmond and Judges Fboessel, Van Voobhis, Bubke and Fosteb concur; Judge Fuld taking no part.
Order affirmed.

.Note The codefendants Feolo and Mastrone were thereafter allowed a lesser plea, were sentenced accordingly and have been free now for more than a decade. The death sentence imposed on Brabson was subsequently commuted to life imprisonment, which sentence the petitioner is now serving in Attica State Prison.

.Note The trial was his third. The first trial, in 1938, resulted in a hung jury. The second trial, held in April, 1939, resulted in the conviction of all the defendants of first-degree murder. However, we reversed, for error at the trial, the judgments against a number of the defendants, including Brabson {People v. Feolo, 282 N. Y. 276).

.Nora The petitioner has expressed dissatisfaction with the conduct of counsel at each of his trials. Upon this appeal he has deemed assigned counsel’s 97-page brief to be inadequate and has submitted to us his own additional handwritten papers, which we have fully considered and find that they add nothing to his cause.