Fuld, J.
The defendant, indicted by the Westchester County Grand Jury for robbery in the first degree, pleaded not guilty. His trial, however, was suspended when he was found to be in such state of “ insanity ” as to be incapable of understanding the charge or proceedings against him or of making his defense (Code Crim. Pro., § 662-b). Committed to Matteawan State Hospital, he remained there until the Fall of 1955 at which time he was certified as ‘ ‘ sane ’ ’ and returned to Westchester County for trial. After another psychiatric examination confirmed the finding that he was capable of understanding the charge and proceedings against him and able to interpose his defense, the prosecution got under way in February, 1956.
The trial, which lasted for three days, was marked by several outbursts on the part of the defendant and this prompted counsel to suggest that his client might be “ so mentally deranged as to be unable to understand the nature of the balance of the proceeding ’ ’ and to move for a ‘ ‘ psychiatric examination * * * to determine whether or not this trial should continue ’’[1] The judge denied the defense motions, stating that it was his opinion, based not only on his personal observation of the defendant (as he said) “ both in * * # and outside of the courtroom ” but also on the psychiatric reports which were before him, that the defendant was u competent to stand trial ”. The case accordingly proceeded to a conclusion and, following the verdict that the defendant was guilty of first degree robbery and the later determination that he had twice before been convicted of felonies, the court sentenced him as a third offender to a term of not less than 30 nor more than 50 years in Sing Sing Prison.[2]
*204 Upon the appeal which the defendant then took to the Appellate Division, he — or, more precisely, his attorney — expressly contended that the trial court had erred in denying his motions for a psychiatric examination to determine his mental condition. The judgment was affirmed (5 A D 2d 871) and leave to appeal to this court was denied in May, 1958.
Two years later, the defendant, confined in Dannemora State Hospital, petitioned for a writ of error coram nobis to vacate his conviction on the ground that he had been “ insane ” during the trial and at the time of sentence. The Westchester County Court denied the petition without a hearing, the Appellate Division unanimously affirmed the resulting order and the appeal is before us by permission of the Chief Judge.
The writ of error coram nobis, as we have repeatedly observed, is ‘ ‘ an emergency measure born of necessity to afford a defendant a remedy against injustice when no other avenue of judicial relief is, or ever was, available to him ”. (People v. Howard, 12 N Y 2d 65, 66.) In short, it is not a substitute for an appeal or for a motion in arrest of judgment or for a motion for a new trial and, if any one of these procedures was, or could have been, invoked, the defendant may not thereafter seek to set aside a judgment of conviction by resorting to coram nobis. (See People v. Howard, 12 N Y 2d 65, 66, supra; People v. Shapiro, 3 N Y 2d 203, 206; People v. Sullivan, 3 N Y 2d 196,198; People v. Sadness, 300 N. Y. 69, 73-74; Matter of Hogan v. Court of General Sessions, 296 N. Y. 1, 6.)
With this fundamental and guiding principle in mind, this court has sanctioned recourse to coram nobis where the issue of the defendant’s mental condition was not presented at the time of plea or trial and an appeal could not have been availed of to bring that question to the attention of an appellate court. (See People v. Hill, 8 N Y 2d 935; People v. Boundy, 10 N Y 2d 518; People v. Sprague, 11 N Y 2d 951; People v. J ones, 12 N Y 2d 1024.) On the other hand, the court has consistently held that the issue of the defendant’s mental state, his capacity to understand the proceedings or to make his defense, may not be urged as a predicate for coram nobis relief where the issue was actually raised and decided by the trial court adversely to the defendant and the correctness of its determination could have been tested on appeal. (See, e.g., People v. Hill, 8 N Y 2d 935, *205 supra; People v. Boundy, 10 N Y 2d 518, 521-522, supra; People v. Riera, 11 N Y 2d 802.) Thus, in the Boundy case, where we sustained the defendant’s use of cor am nobis, we decided that its availability turns upon whether or not a defendant could, on an appeal following his conviction, have challenged the court’s determination as to his mental state. Since Boundy had pleaded guilty, and there had been “no questioning or discussion as to [his] mental condition ” (10 N Y 2d, at p. 521), we noted that coram nobis was “his only method of putting before the courts his assertion that he was in fact insane when he so pleaded ” (p. 522).
In the present case, the question of the defendant’s mental capacity was uppermost in the minds of judge and counsel. The defendant had been subjected to several psychiatric examinations prior to the commencement of the trial and the findings of the psychiatrists were before the court and counsel. His attorney, strongly insisting that the defendant showed signs of being “ mentally deranged ”, sought a further psychiatric examination. After discussing the matter and giving it thought, the judge concluded that the defendant understood the proceedings and was able to defend himself and ruled that no further examination was required. It is, of course, possible that the judge was in error in evaluating the facts and in deciding as he did but the existence of such a possibility will not warrant a departure from the ordinary appellate process mandated by our statutes or entitle the defendant to employ coram nobis as a means of having the courts pass upon an issue previously raised and decided. The facts upon which the trial judge in this case based his decision were in the record for an appellate court to review on a direct appeal from the judgment of conviction — • and, indeed, such an appeal was actually prosecuted by the defendant.
A further word is called for in view of the circumstance that the defendant had been certified as mentally ill and transferred to Dannemora State Hospital shortly after his conviction. This was a fact not known to the trial judge when he made his ruling and not before the Appellate Division when on appeal it affirmed the judgment. This fact does not, however, justify a resort to coram nobis. If this subsequent finding of mental illness was thought to have a bearing upon the defendant’s capacity to *206 understand the proceedings concluded sometime before, the matter should have been brought to the attention of the trial judge by a motion for a new trial upon the ground of newly discovered evidence (Code Crim. Pro., § 465, subd. 7; cf. People v. Shapiro, 3 N Y 2d 203, 206, supra; People v. Coleman, 198 N. Y. 166, 174). And, if he had denied the motion, the record of the trial, supplemented by the newly discovered evidence, would have been before the appellate courts on the appeal from the conviction.
In sum, then, since cor am nobis 11 may not be used as a vehicle for an additional appeal or a belated motion for a new trial ” (People v. Shapiro, 3 N Y 2d 203, 206, supra), it follows that the order appealed from should be affirmed.
Chief Judge Desmond and Judges Dye, Burke, Foster and Scileppi concur with Judge Fuld; Judge Van Voorhis dissents and votes to reverse and to remand the matter for a hearing upon the ground that an issue of fact is presented concerning whether relator’s certification as mentally ill and his transference to Dannemora State Hospital shortly after his conviction may indicate that he was mentally ill at the time of the trial and during the pendency of his appeal (People v. Sprague, 11 N Y 2d 951; People v. Boundy, 10 N Y 2d 518).
Order affirmed.

. The defendant’s attorney made such a motion on three or four occasions —1 just before the case was submitted to the jury and, again, about a week later, after the district attorney had filed an information charging the defendant with being a multiple felony offender.

. Shortly after his commitment to Sing Sing, the defendant was certified as mentally ill by the prison psychiatrist and transferred to Dannemora State Hospital.