■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LORD SALLADEEN, Appellant.—Judgment rendered in the Supreme Court, New York County, on July 22, 1974 convicting defendant, upon a jury verdict, of two counts of robbery in the second degree and one count of assault in the second degree and sentencing him to a term of 7-½ to 15 years on the robbery counts with a concurrent term of 3-½ to 7 years on the assault count, affirmed. With the aid of two accomplices the defendant attacked a helpless 65-year-old lady in broad daylight at 120th Street and Lenox Avenue in this city. The defendant ripped the screaming victim's jacket from her body and removed therefrom four $10 bills and two $5 bills, money she had withdrawn from her bank moments before. Fortunately, a neighbor saw the attack and with the help of his dog gave chase. A passing police car was flagged down and the defendant was caught in hot pursuit and the money taken from the victim was recovered from his pockets. Defendant's proof of guilt is overwhelming. Indeed, he does not contest his guilt on this appeal. Many months elapsed between arrest and trial. The case had been calendared at least 12 times. Salladeen had discharged three successive court-appointed attorneys. On May 11, 1974 Salladeen informed the Presiding Justice that he was then and there ready to try the case with any lawyer in the world. The following day Salladeen conferred with his fourth court-appointed attorney, Joseph Brill, Esq., a competent lawyer of vast experience, specializing in criminal law. Following the conference with his client, Mr. Brill stated that he was ready for trial. The defendant, reversing his position of the previous day, then objected to an immediate trial. Later that day a *Huntley* hearing was to be held, and the court advised the defendant that he would have adequate time to confer with counsel before any testimony would be taken. Salladeen's response was to threaten to go berserk and stand naked. Testimony did not begin until six days later. Thus, as promised by the court, the defendant had more than adequate time to confer with counsel. Under these circumstances, we reach the inescapable conclusion that Salladeen did not seek an adjournment in order to prepare for trial, but to delay his trial once again and to make a mockery of the proceedings. This he may not do. *(People v Brabson,* 9 NY2d 173, 179; *People v Mooney,* 18 AD2d 1112, cert den 375 US 887.) CPL 730.30 (subd 1) provides that a court may issue an order for a psychiatric examination "when it is of the opinion that the defendant may be an incapacitated person." After his adjournment request was denied, Salladeen asked the court for "a 730 commitment to determine sanity." Upon the court's denial of the request, Salladeen threatened to "go beserk." The court observed: "You [defendant] impress me as being a man of intelligence and sanity and in full control of what you're doing so your application for a hearing is denied." Nevertheless, the court reviewed the defendant's psychiatric rec-

ords from the Department of Correction and thereafter announced on the record that after reviewing defendant's medical records the court found nothing in them that would indicate to him in any way that Salladeen was not competent to stand trial. It is only when the court is of the opinion that the defendant may be an incapacitated person that a psychiatric examination may be ordered. Here, the court relied on his extensive personal observation of the defendant and on defendant's psychiatric records. Salladeen's request for the examination came only after all other efforts to delay trial had failed. No history of mental illness was mentioned by him. Merely an unsubstantiated request for the examination. Only after his request was denied and his trial imminent did the defendant threaten to go beserk and stand naked. The record justifies the trial court's observation that "the only time the defendant appears to act up is when the jury is brought in." We have examined the other points raised by defendant, including excessiveness, and find them without merit. Mr. Salladeen received a fair trial with the adequate assistance of competent counsel and we affirm. Concur— Markewich, J. P., Kupferman and Nunez, JJ.; Murphy, J., dissents in a memorandum as follows: I would reverse the instant conviction because defendant was denied his constitutional right to the effective assistance of counsel and remand for a new trial, but only after it is determined that defendant is not an incapacitated person. Defendant was charged with two counts of robbery in the second degree, grand larceny in the third degree and assault in the second degree, all serious crimes for which, on conviction, he could (and did) receive a lengthy sentence. Over defendant's objection, the instant trial commenced on the very day trial counsel was appointed and after a brief 10-to-15 minute bull pen interview. Concededly, defendant had previously discharged three other attorneys and, in a bombastic display of arrogance, agreed to "try the case with any lawyer in the world." However, once the court appointed a new lawyer, defendant's constitutional right to his effective assistance cannot be abridged by a failure to afford defendant a reasonable time to consult with him in connection with the preparation of a defense. Counsel's statement that he was ready to try the case of a defendant charged with two Class C felonies on the basis of a 15-minute interview is obviously deserving of no weight. Respondent's reliance on *People v Brabson* (9 NY2d 173) to refute appellant's argument is misplaced. In *Brabson,* the court (citing *People v McLaughlin,* 291 NY 480) clearly distinguished a case such as this from its holding. While it may be true that a defendant cannot make a mockery of the proceedings by unreasonable trial delays, a constitutional right and fundamental principle of justice is not satisfied merely by the pro forma presence of a licensed attorney. Respondent's assertion that six days passed from the time the case was marked for trial to the time testimony began, thus affording adequate time to prepare a defense, ignores the following: counsel was assigned on June 12, 1974 and jury selection began that day; a *Wade* hearing was held on June 13; no session was held on Friday, June 14, in deference to defendant's religion; on Monday, June 17, defendant was in Bellevue "for examination after a purported suicidal attempt"; and the trial resumed on June 18. My second reason for dissenting is that I am unable to make an informed judgment as to the correctness of the Trial Judge's refusal to have appellant examined under CPL 730.30. Counsel's initial request for such examination was summarily denied. Later, after defendant disclosed the medication he was receiving, described its effect on him and threatened to disrobe, the court reviewed certain medical records "and found nothing in them that would indicate * * * in any way that [defendant was] incompe-

tent to stand trial." Unfortunately, whatever records the court used to reach such conclusion were not marked in evidence; and are therefore not available to us for review. In light of our obligation to insure that legally incompetent persons are not convicted of crimes *(People v Cisneros,* 45 AD2d 510), I fail to see how we can sustain this conviction on the instant record. *People v Brown* (13 NY2d 201), relied on by respondent, is inapposite. Indeed, if anything, it supports appellant hereon. In *Brown,* the Court of Appeals held (p 205) that *coram nobis* relief does not lie where, unlike here, "The facts upon which the trial judge * * * based his decision were in the record for an appellate court to review on a direct appeal from the judgment of conviction—and, indeed, such an appeal was actually prosecuted by the defendant." Accordingly, the judgment appealed from should be reversed and a new trial directed.