*299 OPINION OF THE COURT
William Kapelman, J.
Petitioner moves pursuant to CPL 440.10 (subd 1, par [h]) to vacate judgment on the ground that it was obtained in violation of his State and Federal constitutional rights. Specifically, he claims that the trial court’s instruction to the jury as to the element of intent was erroneous because a similar jury instruction was recently held unconstitutional by the Supreme Court of the United States in Sandstrom v Montana (442 US 510). The issue before this court is whether petitioner can collaterally attack the judgment on such grounds where the claimed constitutional error was apparent on the face of the record and was not challenged by petitioner at trial or on direct appeal. This court has not found any reported decision in New York involving a postconviction collateral attack on a judgment based on the recent case of Sandstrom v Montana (supra) which addresses this procedural issue (see People v Reese, 100 Misc 2d 951 [where the court ruled on the merits]).
On October 30, 1973, the Grand Jury of Bronx County charged petitioner with the crimes of murder and possession of a weapon as a misdemeanor. Trial commenced on February 28, 1975, and the court instructed the jury on the law on March 11, 1975. As part of the court’s extensive instructions concerning the element of intent, the court charged: "the law says a person is presumed to intend the natural and probable consequences of his act * * * the law says that a person is presumed to intend that which he actually does.” Petitioner took no exceptions to the court’s instructions to the jury. On March 11, 1975, the jury found petitioner guilty of both counts of the indictment and on April 30, 1975, the court sentenced petitioner to an indeterminate term of imprisonment with a maximum term of life and a minimum period of 15 years. On direct appeal to the Appellate Division, First Department, petitioner did not raise the issue of the court’s instructions to the jury concerning the element of intent. On November 15, 1977, the Appellate Division, First Department, affirmed the judgment without opinion (People v Cunningham, 59 AD2d 1066). Petitioner’s application for leave to appeal to the Court of Appeals was denied by Judge Jones on February 21, 1978 (43 NY2d 960).
On June 18, 1979, the Supreme Court of the United States held that in a case in which intent is an element of the crime charged, a jury instruction that "the law presumes that a *300 person intends the ordinary consequences of his voluntary acts” violates the requirement of the Fourteenth Amendment that the State prove every element of the crime beyond a reasonable doubt (Sandstrom v Montana, 442 US 510, 523-526, supra). The court reasoned that the specific words of the instruction to the jury did not create a permissive inference because the jury was not given the choice of accepting or rejecting the proposition. Moreover, the instruction did not create a rebuttable presumption. Rather, the jury could have believed that the instruction was a mandatory, conclusive presumption. Thus, the instruction had the effect of relieving the State of the burden of proof as to every fact necessary to establish the crime and invaded the fact-finding function of the jury (Sandstrom v Montana, supra, at pp 514-517, 521-524).
Appellate courts in New York have applied Sandstrom in direct appeals and have reversed judgments (see People v Jones, 74 AD2d 854; People v Egan, 72 AD2d 239; People v Thomas, 71 AD2d 280 [trial courts used word "presumed”]), have affirmed judgments (see People v Collazo, 74 AD2d 853; People v Thomas, 74 AD2d 614; People v Blum, 72 AD2d 691; People v Reyes, 71 AD2d 1034; People v Parker, 71 AD2d 986 [Bloom, J., concurring]; People v Fournier, 70 AD2d 491 [trial courts used words "presumed”, "rebuttable presumption”, or "must infer”, but errors deemed harmless in light of remainder of court’s instructions to jury and overwhelming evidence of guilt]), and have found no error (see People v Davis, 72 AD2d 749; People v Gonzalez, 72 AD2d 508 [trial courts used words "may infer”]; see, also, People v Albino, 74 AD2d 831; People v Gray, 71 AD2d 295 [trial courts used word "presumed”, but no error in light of remainder of court’s instructions to jury]).
CPL 440.10 codifies the common-law writ of error coram nobis, a remedy designed to inform the court of facts not reflected in the record and unknown at the time of the judgment which as a matter of law would undermine the basis of the judgment (People v Crimmins, 38 NY2d 407, 418; People v Caminito, 3 NY2d 596, 601). Because this former remedy focused on matters outside the record, the courts always held that the writ could not be invoked where the claimed error of law was apparent on the face of the record (People v Shapiro, 3 NY2d 203, 206; People v Sullivan, 3 NY2d 196, 197; People v Kenneth A., 36 AD2d 859, 860; *301 People v Speilman, 26 AD2d 574, 575; People v Bye, 95 Misc 2d 1031, 1034). This rule was established because it was recognized that errors appearing in the record are easily reviewable on direct appeal, and as long as the defendant had an opportunity to appeal from the judgment, he had an adequate remedy. Thus, it was settled that the writ could not be used as a vehicle for an additional appeal or as a substitute for a direct appeal (People v Brown, 13 NY2d 201, 204, 206; People v Howard, 12 NY2d 65, 66-68; People v Shapiro, supra, at p 206; People v Barker, 71 AD2d 902, 903; People v Kenneth A., supra, at p 860; People v Bye, supra, at p 1035).
In essence, therefore, the writ of error coram nobis was viewed as an emergency measure to afford a defendant a remedy when no avenue of judicial relief is, or ever was, available to him (People v Brown, supra, at p 204; People v Howard, supra, at p 66; People v Sullivan, supra, at p 200; People v Siena, 19 AD2d 524). A collateral attack on a judgment was allowed only when a direct appeal was foreclosed because the issue was not presented by the record and was therefore unappealable. To permit a defendant to raise appealable issues after the determination of a direct appeal by bringing a writ of error coram nobis was always considered an impermissible enlargement of this extraordinary remedy and an improper alteration of its historic function of supplying a remedy when no other form of relief was ever available (People v Bennett, 30 NY2d 283, 288; People v Kenneth A., supra, at p 860; People v Bye, supra, at pp 1035, 1036). Thus, if a defendant failed to pursue direct appellate procedures for review of appealable claims, he could not collaterally attack the judgment even where the asserted error was of constitutional magnitude (People v Howard, supra, at pp 67-68; People v Caminito, 3 NY2d 596, 601, supra; People v Bye, supra, at pp 1035-1036). These principles were applied in cases where, as here, the claimed constitutional violations concerned the court’s instructions to the jury (see, e.g., People v Speilman, 26 AD2d 574, supra; People v Diel, 13 AD2d 840; People v Kimmel, 13 AD2d 549).
CPL 440.10 (subd 2, par [c]), the codification of the common-law principles set forth above, states:
"Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when: * * *
"Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon *302 appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant’s unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him”. It is apparent from the language of this statute that the Legislature intended that the policies and rules governing the former writ of error coram nobis as established by case law should apply to motions to vacate judgment under the CPL. This statute clearly mandates a denial of petitioner’s motion to vacate judgment because (1) the trial court’s instructions to the jury appear on the record of the proceedings underlying the judgment; (2) the propriety of the trial court’s instructions to the jury as to the element of intent was reviewable on direct appeal from the judgment; and (3) no appellate review occurred because petitioner unjustifiably failed to raise the issue on the direct appeal he actually perfected. Petitioner argues, however, that his failure to raise the issue on direct appeal was not unjustifiable because the constitutional principle on which he relies was first enunciated by the Supreme Court of the United States more than one and one-half years after the judgment was affirmed on appeal. Thus, he claims that he could not have successfully raised this issue on direct appeal because Sandstrom v Montana (442 US 510, supra) brought about a change in the law after his direct appeal was decided, and that this new constitutional law should be given retroactive effect.
Even assuming, arguendo, that Sandstrom v Montana (supra) created new constitutional law, petitioner would not be entitled to the relief he seeks. A court need not summarily deny a motion to vacate a judgment in a case where there has been a retroactively effective change in the law controlling the issue raised in the motion, but only where (1) the issue raised in the motion was previously determined on the merits on an appeal from the judgment or in a prior proceeding other than direct appeal in State or Federal court; and (2) the retroactively effective change in the law occurred after the determination on the merits (CPL 440.10, subd 2, par [a]; 440.10, subd 3, par [b]). In striking contrast, the Legislature made no mention of retroactively effective changes in the law when it provided for summary denial of a motion to vacate judgment in cases where a defendant could have but did not raise the *303 issue on direct appeal (see CPL 440.10, subd 2, par [c]). This court therefore concludes that a court must deny a motion to vacate judgment where a defendant could have but did not raise an issue on direct appeal, despite a subsequent retroactively effective change in the law controlling that issue. Thus, even if Sandstrom constituted a retroactively effective change in the law, petitioner’s motion to vacate judgment would have to be summarily denied because he could have but did not raise the issue on direct appeal before Sandstrom was decided. In fact, petitioner has never raised this issue in any other forum by seeking another postconviction remedy.
This court is not convinced, however, that Sandstrom v Montana (supra) created a substantive change in the law. Two panels of the Appellate Division, Fourth Department, have apparently held that Sandstrom did establish a new constitutional principle and that it should be given retroactive effect to cases pending appeal although the trials preceded the decision (see People v Egan, 72 AD2d 239, 243, supra; People v Gray, 71 AD2d 295, 297, supra). Nevertheless, this court respectfully disagrees. Over 100 years ago, the Court of Appeals declared: "To constitute crime there must not only be the act, but also the criminal intention, and these must concur, the latter being equally essential with the former * * * The intention may be inferred from the act, but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law to be applied by the court (Stokes v People, 53 NY 164, 179). Thus, that court held that the trial court erred by instructing the jury that the law implied criminal intent to kill from the proof of the homicide (Stokes v People, supra, at p 180). The principles enunciated in Stokes have been followed and reasserted many times since 1873 (see, e.g., People v Downs, 123 NY 558; People v Fish, 125 NY 136; People v Cooke, 292 NY 185). The jury instruction that "a man is presumed to intend the natural and necessary consequences of his act” and a substantially similar instruction have been challenged after Stokes, and the Court of Appeals has held that such instructions are proper if it is clear that the jury may draw the inference as a fact but is not bound to draw the inference as a matter of law (People v Fish, supra, at p 153; People v Cooke, supra, at p 190). Indeed, the Court of Appeals has specifically stated that such a jury instruction which imposes a presumption as a matter of law is erroneous because it has the effect of relieving the People of the burden *304 to prove every element of the crime and shifts the burden to the defendant to show justification (People v Downs, supra, at pp 565, 567-568; People v Fish, supra, at p 153). As in Stokes and the case at bar, these cases involved the inference of intent to kill from proof that the accused committed the homicide. Recently, the Court of Appeals noted that ever since 1829, New York has refused to imply intent to kill from the act of killing. Rather, the law has required that in order to prove murder, the prosecution must establish that the accused possessed the design to effect death (People v Patterson, 39 NY2d 288, 299). In August, 1977, only months before petitioner’s direct appeal was heard and decided, the Appellate Division, Second Department, applied the principles of Stokes to a jury instruction which improperly removed from the jury the choice of drawing an inference of intent from the act, or rejecting such an inference (People v O'Neill, 59 AD2d 540, 542-543).
It is plain, therefore, that the courts of New York had recognized long before the decision by the Supreme Court of the United States in Sandstrom that such a jury instruction which does not create a permissible inference may lead a jury to improperly conclude that the presumption is implied by law and that once the proof establishes a voluntary act, the necessary criminal intent is established by proof of the act. The courts of New York had articulated the same reasoning in determining this matter of State law as that which the Supreme Court of the United States utilized to find Federal constitutional error in Sandstrom. Clearly, petitioner could have challenged the jury instruction he now claims was erroneous at trial or on direct appeal based on a long line of New York cases, the most recent of which was reported only months before his own appeal was heard and decided. This court does not believe, therefore, that Sandstrom v Montana (442 US 510, supra) created a substantive change in the law, although the case did establish for the first time that the objectionable jury instruction violated Federal constitutional requirements. Since the claimed violation of petitioner’s State and Federal constitutional rights could have been litigated under the law as it existed prior to Sandstrom (see People v Bennett, 30 NY2d 283, 288, supra), his failure to raise the issue on direct appeal was unjustifiable.
For the foregoing reasons, petitioner’s motion to vacate judgment must be summarily denied (CPL 440.30, subd 2).