**Vander L. BEATTY, Petitioner,**

v.

**Joseph C. SNOW, Superintendent of Mid-Orange Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.**

84 Civ. 2812.

United States District Court,
S.D. New York.

May 18, 1984.

Ramsey Clark, Lawrence W. Schilling, New York City, for petitioner.

Elizabeth Holtzman, Dist. Atty., Kings County, Brooklyn, N.Y., for respondents; Michael J. Halberstam, Asst. Dist. Atty., Brooklyn, N.Y., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Vander L. Beatty, a former state senator and the petitioner herein, was convicted on December 22, 1983, after a nonjury trial in the Supreme Court of the State of New York, Kings County, of conspiracy in the fifth degree[1] and thirteen counts of forgery in the second degree.[2] The charges centered about an unlawful scheme to overturn the results of a 1982 election that petitioner lost for the Democratic Party nomination for a seat in the United States House of Representatives, whereby signatures on voter registration cards were forged so that the election could then be challenged as fraudulent.

Following his conviction, petitioner moved, on February 3, 1984, to set the verdict aside and for an order either dismissing the indictment or directing a new trial. After an evidentiary hearing, this motion was denied by the trial judge and petitioner was sentenced to one and one-third to four years imprisonment and immediately remanded to custody. On the same day, he applied to a justice of the Appellate Division, Second Department, for a stay of execution and an order releasing him on his own recognizance or fixing reasonable bail pending determination of the appeal from the judgment of conviction.[3] After hearing oral argument by petitioner's trial counsel and an Assistant District Attorney, Justice Isaac Rubin of the Appellate Division denied the application.

Thereafter, on March 7, petitioner, represented by substituted counsel, his attorney on this application, moved before Justice Rubin for renewal and reargument of the motion for a stay and for release or the fixing of reasonable bail. In his papers accompanying the motion for renewal and reargument, petitioner, citing *Finetti v. Harris*,[4] specifically claimed that the failure to grant a stay of execution pending appeal "[d]enied [petitioner] [d]ue [p]rocess of [l]aw, [e]qual [p]rotection of the [l]aws and [r]easonable [b]ail in [v]iolation of the [f]ifth, [e]ighth and [f]ourteenth [a]mendments to the Constitution of the United States."[5] Justice Rubin granted the motion for renewal and reargument, but adhered to his original determination. No reasons were assigned by Justice Rubin in his two decisions denying bail.

---

1. N.Y.Penal Law § 105.05 (McKinney's 1983–84).

2. *Id.* § 170.10 (McKinney's 1975).

3. Unlike the practice in the federal courts, New York practice does not permit a defendant who has been convicted to apply for bail pending appeal both at the trial court and at the appellate court. *Compare* Fed.R.App.P. 9(b) *with* N.Y.Crim.Proc.L. § 460.50(3) (McKinney's 1983).

4. 609 F.2d 594 (2d Cir.1979).

5. Pet.Ex. 3, at 23–24.

On April 20, 1984, petitioner applied to this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982), asserting that the denial of his application for a stay of execution of judgment and for release upon his own recognizance or the fixing of reasonable bail pending appeal was irrational and arbitrary and in violation of his constitutional rights.[6] This claim is the "same claim" presented to Justice Rubin upon the motion for renewal and reargument,[7] and, under New York law, Justice Rubin's decision adhering to his original denial of petitioner's application for bail is not subject to further direct review in the New York courts.[8] Upon the argument of the instant petition, the Assistant District Attorney representing the state raised no issue as to petitioner's exhaustion of available state remedies, since he was of the view that collateral review of Justice Rubin's decision by a state writ of habeas corpus would be futile.[9] Although this evaluation of the law of New York does not appear entirely supported by the decisions of the New York courts,[10] under the circumstances of this case, in which petitioner squarely presented his federal constitutional claims for bail pending appeal to a justice of the state's intermediate appellate court who then ruled on the merits of the claims, and where the state's representative asserts that further state remedies appear to be futile and the state does not press the issue of nonexhaustion in response to specific questions from the Court, it is difficult to see how principles of comity which underlie the exhaustion requirement are offended by a consideration of the merits of the petition.[11] Accordingly, the Court proceeds to the merits.

6. In his brief accompanying his petition, Beatty concedes that there is no federal constitutional right to bail pending appeal and that the mere failure to give reasons for the denial of bail is not a basis for the relief pursuant to 28 U.S.C. § 2254. *See* Pet. Brief at 2–3; *Young v. Hubbard,* 673 F.2d 132, 134 (5th Cir.1982) (per curiam); *Jenkins v. Harvey,* 634 F.2d 130, 132 (4th Cir.1980); *Finetti v. Harris,* 609 F.2d 594, 601 (2d Cir.1979); *United States ex rel. Walker v. Twomey,* 484 F.2d 874, 876 (7th Cir.1973).

7. *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

8. The decisions of our Court of Appeals and the New York Court of Appeals recognize that in New York courts there is no route of direct appeal available to a defendant who has been denied bail. *See Finetti,* 609 F.2d at 597; *People ex rel. Rosenthal v. Wolfson,* 48 N.Y.2d 230, 232, 397 N.E.2d 745, 745, 422 N.Y.S.2d 55, 55 (1979).

9. The Assistant District Attorney's exact words were: "[A]lthough I disagree with everything else, I agree with Mr. Clark that there probably has been exhaustion in this case." Then, in response to a question by the Court—"[W]hy do you feel there has been exhaustion?"—the Assistant District Attorney stated that "the state writ of habeas corpus has been extremely circumscribed by the New York state courts" and that the state courts have reduced the state proceeding for a writ of habeas corpus to one limited to the remedies provided by coram nobis. If his view is correct, the state's practice would render futile an attempt by collateral review to attack Justice Rubin's decision on the grounds alleged here. *See People v. Brown,* 13 N.Y.2d 201, 195 N.E.2d 293, 245 N.Y.S.2d 577 (1963), *cert. denied,* 376 U.S. 972, 84 S.Ct. 1140, 12 L.Ed.2d 86 (1964).

10. *See People ex rel. Rosenthal v. Wolfson,* 48 N.Y.2d 230, 232, 397 N.E.2d 745, 745–46, 422 N.Y.S.2d 55, 55–56 (1979); *People ex rel. Klein v. Krueger,* 25 N.Y.2d 497, 499, 255 N.E.2d 552, 554, 307 N.Y.S.2d 207, 209–10 (1969).

11. *See Rose v. Lundy,* 455 U.S. 509, 515–20, 102 S.Ct. 1198, 1201–04, 71 L.Ed.2d 379 (1982). Resort to the principles of comity is necessitated by the lack of guidance provided by the decisions in this area. Neither *Finetti v. Harris,* 609 F.2d 594 (2d Cir.1979), nor *Brown v. Wilmot,* 572 F.2d 404 (2d Cir.1978), indicates whether state-law collateral relief by available habeas corpus, *see supra* n. 10, must be sought notwithstanding that a federal constitutional objection to the denial of bail pending appeal had been fully presented to a state judge whose decision is not subject to further direct appellate review in the state courts. *See Finetti,* 609 F.2d at 597; *Brown,* 572 F.2d at 406. The decision in *Daye v. Attorney General of New York,* 696 F.2d 186 (2d Cir.1982) (en banc), simply restates the rule of *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), that presentation of a federal constitutional claim to a state's highest court—which in this case would be the New York Court of Appeals—is sufficient to comply with the exhaustion requirement. *Compare Brown,* 344 U.S. at 447, 73 S.Ct. at 402, *with Daye,* 696 F.2d at 190 n. 3. *Daye* does not clearly indicate whether, as a general matter, presentation of a federal constitutional claim to the state's highest tribunal is necessary to comply with the exhaus-

The decision of our Court of Appeals in *Finetti v. Harris*[12] teaches that a state violates a prisoner's federal constitutional rights when, having provided by law for the discretionary grant of bail pending appeal, it denies such bail and there is "no rational basis in the record to support the denial...."[13] When, as here, the discretionary decision to deny bail[14] is unaccompanied by a statement of reasons explaining the decision, the state court's judgment is entitled to "a 'presumption of regularity.'"[15] However, "[t]his presumption may be overcome; but the defendant bears the burden of showing that there is no rational basis in the record for the denial of bail."[16]

▪ Under New York law, a decision to deny bail pending appeal is authorized if, upon consideration of enumerated factors bearing on the likelihood that the defendant will appear when required, including the defendant's reputation, character, family ties and interests, employment, past criminal record, if any, as well as the merit or lack of merit of his appeal, the judge to whom the application has been made concludes that future appearances cannot be secured by bail. The statute further provides:

> A determination that the appeal is palpably without merit alone justifies, but does not require, a denial of the application, regardless of any determination with respect to the factors [affecting the likelihood of future appearances].[17]

As noted above, Justice Rubin did not articulate his reasons for denial of bail.

The state makes no claim—nor could it fairly do so in light of petitioner's history and background—that the denial of bail can rationally be supported on the ground that petitioner would abscond from the jurisdiction. Rather, it contends that Justice Rubin's decision to deny bail was based on the ground that petitioner's "appeal" is "palpably without merit." The petitioner, on the other hand, asserts that there was no rational basis in the record for this latter conclusion and, in fact, "the likelihood of reversal is high."[18] Upon a careful review of the record presented to Justice Rubin, the Court holds that the record did supply a rational basis for his decision denying bail and, accordingly, the presumption of regularity has not been overcome.

In his motion for renewal and reargument in the state court, petitioner presented eight grounds in support of his contention that his conviction and sentence were infected by reversible error. Three of these grounds are directly predicated upon the claim that his conviction should have been set aside because the state's "principal" witness, one Linda Sutton, a former secretary to petitioner and a worker in his congressional campaign, had "recanted" her trial testimony implicating petitioner in the unlawful scheme. The only evidence of this alleged recantation presented to Justice Rubin was a tape recording allegedly of Sutton's statements repudiating her trial testimony made during an interview at the office of petitioner's substituted counsel on January 7, 1984, the affidavit of petitioner's substituted counsel attesting to the

---

tion rule if a hearing in that court is available only by collateral review. Here, of course, in addition to the fact of a full presentation of the federal constitutional issue to Justice Rubin, there is the state's acquiescence in, if not request for, an adjudication on the merits, *cf. Thompson v. Wainwright*, 714 F.2d 1495, 1504 (11th Cir.) ("comity ... implies power of the state to waive its right of initial review"), *appeal pending*, —— U.S. ——, 104 S.Ct. 476, 78 L.Ed.2d 675 (1983), as well as an expression by the state's own representative that state collateral relief would be futile. The denomination of the exhaustion requirement as "jurisdictional," *Parker v. Rose*, 728 F.2d 392, 394 (6th Cir.1984); *see Gulliver v. Dalsheim*, 687 F.2d 655, 657 n. 1 (2d Cir.1982), does not render these facts irrelevant.

**12.** 609 F.2d 594 (2d Cir.1979).

**13.** *Id.* at 595.

**14.** *See* N.Y.Crim.Proc.L. § 530.50 (McKinney's 1971).

**15.** *Finetti*, 609 F.2d at 601 (*quoting Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1939)).

**16.** *Id.*

**17.** N.Y.Crim.Proc.L. § 510.30(2)(b) (McKinney's 1971); *see id.* § 510.30(2)(a).

**18.** Petition at 9; *see* Pet. Ex. 3, at 9.

substance of Sutton's remarks at the interview, a transcript of the tape recording, and an unsworn handwritten statement by Sutton to the effect that, contrary to her testimony, she "did not receive instructions from Vander Beatty to forge signatures." [19] In addition, Justice Rubin had before him the minutes of the hearing on the motion to set aside the conviction, at which the various hearsay statements were offered, and at which Sutton, invoking her fifth amendment rights, refused to testify that her testimony at trial was false.

■ The record also included the trial judge's ruling upon the conclusion of the hearing, denying petitioner's motion to set aside the verdict. The oral opinion leaves no room to doubt that, as the fact-finder, the trial judge, "after carefully consider[ing] the matters" submitted on the motion, found Linda Sutton's trial testimony again to be credible and that the hearsay statements of recantation attributed to her were untrustworthy. [20] In light of the trial court's findings, the fair inferences to be drawn from them, and the nature of the evidence of recantation, Justice Rubin had ample basis for concluding that, insofar as the claims of perjured testimony at the trial were concerned, the appeal was meritless.

■ Petitioner also argued to Justice Rubin, however, that the trial judge so unfairly conducted the hearing on the motion to vacate the judgment that Beatty was denied due process of law. Yet the transcript of the hearing reveals that despite the hearsay nature of the alleged "recanting" statements, petitioner's substituted counsel was permitted to testify to the circumstances surrounding the making of the tape recording of the January 7, 1984, interview, as well as to the substance of Sutton's remarks. The only other witness called by petitioner at the hearing was Sutton herself, and, as noted above, she invoked her fifth amendment privilege in response to questions by petitioner's counsel. Based on these facts, Justice Rubin could rationally conclude that Beatty was accorded due process in his attempt to establish that Sutton had recanted her testimony, and, that the attack on the conduct of the hearing was, accordingly, unmeritorious. [21]

Beatty raised other alleged errors with Justice Rubin, but, with these, too, there was ample basis in the record for the conclusion that they presented no substantial questions. Petitioner, for example, claimed that his right to due process was violated when, upon Sutton's invocation of her fifth amendment privilege at the hearing on the motion to set aside the verdict, the prosecutor refused to grant Sutton immunity from prosecution for perjury. Under the standards applicable to such a claim in New York, a constitutional violation may be found only upon a showing that the prosecutor "abused" the power to grant immunity, as for example, when "the prosecutor builds his case with immunized witnesses but denies the defendant a similar opportunity or affirmatively threatens the defendant's witnesses with prosecution for perjury if they give evidence favorable to the defense." [22] Petitioner's papers in the Appellate Division and the other portions of the record indicate only that the District Attorney "gave" Sutton a plea agreement to community service and "declined to prosecute" another witness called during the state's case in chief. Upon the record, Justice Rubin could rationally conclude that petitioner would be unable, on appeal, to make the required showing.

Petitioner also assigned as error and set forth in his application for bail the prosecu-

---

**19.** Although the affidavit asserts that its maker was "duly sworn," there is no notorization indicating such a fact. *See* Pet. Ex. 3–D.

**20.** Pet. Ex. 3–B, at 38–40. The general rule is that even sworn recantation testimony is to be viewed with suspicion. *See United States v. Manfredi,* 447 F.Supp. 847, 850 & n. 10 (S.D.N.Y. 1978), and the cases cited therein.

**21.** *See Daye v. Attorney General of New York,* 712 F.2d 1566, 1570 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 278, 79 L.Ed.2d 184 (1983).

**22.** *People v. Adams,* 53 N.Y.2d 241, 247, 423 N.E.2d 379, 381, 440 N.Y.S.2d 902, 904 (1981).

tor's "misconduct" in failing to disclose *"Brady"* material. The record fails to indicate that the material alleged to have been unconstitutionally withheld was specifically requested by defense counsel prior to trial. In addition, it is apparent that the material allegedly withheld is at most of only an impeachment nature. Upon an appeal, the state court would be bound by the Constitution to reverse only "if the omitted evidence creates a reasonable doubt [of petitioner's guilt] that did not otherwise exist." [23] Based on Sutton's trial testimony, which was submitted to Justice Rubin, and which the trial judge, as noted above, found truthful, it would not be irrational for Justice Rubin to have concluded that the allegations of *Brady* violations were without merit. The same may be said of petitioner's remaining allegation of prosecutorial misconduct—that the District Attorney brought Sutton before the grand jury after an indictment had been handed down for the sole purpose of gathering additional testimony.[24] Other than counsel's statement that the grand jury proceedings were improperly conducted, there was no evidence whatsoever of wrongdoing submitted to Justice Rubin to support the charge.

Petitioner's final ground raised before Justice Rubin concerning the merits of his appeal of the judgment of conviction was that even assuming the evidence relied upon by the trial court was properly admitted, there was insufficient evidence to support the judgment. As the record in the Appellate Division indicated, however, Sutton's testimony directly implicated Beatty in a scheme to forge voting documents as well as in actual acts of forgery. Beatty's challenge to the evidence, however, relied on nothing more than assertions that Sutton's testimony, and that of others was "demonstrably false," and "inherently incredible." The constantly reiterated pejo-

rative characterizations of the testimony of the state's two main witnesses—Sutton and one Betty Edwards—as "incredible" is no substitute for reasoned argument based on the evidence that the state had not proved its case beyond a reasonable doubt.[25] Given the standards applicable to an appeal predicated upon an attack on the sufficiency of the evidence,[26] the strength of the evidence against petitioner, and the detailed findings of the trial judge, both at the conclusion of the trial and on the motion to vacate the judgment of conviction, a determination that petitioner's claim that the evidence was insufficient to support the judgment was "palpably without merit" would not be irrational or arbitrary.

Because the record presented Justice Rubin with a rational basis for concluding that each of the grounds of appeal raised by petitioner in his application for bail pending appeal was without merit, the petitioner has failed to overcome the presumption of regularity which attaches to the decision to deny him bail. Accordingly, the petition must be dismissed.

So ordered.

---

**23.** *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976).

**24.** *See In Re Morse,* 42 Misc. 664, 87 N.Y.S. 721 (Gen.Sess.1904).

**25.** A transcript of Edwards' testimony was not made available to Justice Rubin.

**26.** *See, e.g., People v. Smith,* 55 N.Y.2d 945, 947, 434 N.E.2d 246, 247, 449 N.Y.S.2d 177, 178 (1982).